### HAYNES v. LAPEER CIRCUIT JUDGE.

1. CONSTITUTIONAL LAW—POLICE POWERS—MENTAL DEFECTIVES—
    CLASS LEGISLATION.

> Legislation which, in carrying out a public purpose for the
> common good, is limited by reasonable and justifiable
> differentiation to a distinct type or class of persons is
> not for that reason unconstitutional because class legis-
> lation, if germane to the object of the enactment and made
> uniform in its operation upon all persons of the same
> class to which it naturally applies; but if it fails to in-
> clude and affect alike all persons of the same class, and
> extends immunities or privileges to one portion and de-
> nies them to others of like kind, by unreasonable or arbi-
> trary subclassification, it comes within the constitutional
> prohibition against class legislation.

2. SAME—STERILIZATION—STATUTES—CLASS LEGISLATION.

> Act No. 34, Pub. Acts 1913 (1 Comp. Laws 1915, § 5176
> et seq.), providing for the sterilization, by means of a
> surgical operation, mentally defective persons maintained
> wholly or in part by public expense in public institutions,
> is unconstitutional as class legislation.

Mandamus by H. A. Haynes, medical superintend-
ent of the Michigan Home and Training School, to
compel William B. Williams, circuit judge of Lapeer
county, to vacate an order sustaining an order of the
probate court denying a petition filed under Act No.
34, Pub. Acts 1913. Submitted January 22, 1918.
(Calendar No. 28,151.) Writ denied March 28, 1918.

*Alexander J. Groesbeck*, Attorney General, and
*Clare Retan* and *L. W. Carr*, Assistants Attorney Gen-
eral, *amicus curiæ*.

STEERE, J. In this proceeding by mandamus plain-
tiff seeks review and reversal of an order of the cir-
cuit court of Lapeer county sustaining an order of the
probate judge of that county refusing to entertain

jurisdiction on plaintiff's petition for a hearing in the probate court to determine the question of sanity of an alleged incompetent named Nora Reynolds, confined in the Michigan Home and Training School at Lapeer in said county, and the necessity of performing upon her the operation of salpingectomy "as in other insane cases before such courts," under the provisions of Act No. 34 of the Public Acts of 1913 (1 Comp. Laws 1915, § 5176 *et seq.*). The probate court dismissed said petition and on appeal the circuit court sustained the order of dismissal on the ground that said act is unconstitutional.

The statute in question is entitled:

"An act to authorize the sterilization of mentally defective persons maintained wholly or in part by public expense and public institutions in this State and to provide a penalty for the unauthorized use of the operations provided for."

The operations provided for in the act are (on the male) vasectomy and (on the female) salpingectomy, "or any other operation or improvement on vasectomy or salpingectomy recognized by the medical profession, as the case may be, upon such person." By section 5 of the act, except as authorized therein, such operations "unless the same shall be a medical necessity," are made a felony punishable by five years' imprisonment in the State prison or a fine not to exceed $1,000, or both, in the discretion of the court.

Briefly summarized, this act authorizes the management of any publicly maintained institution of the State authorized to hold in custody individuals who have been adjudicated by a court of competent jurisdiction mentally defective or insane, to render incapable of procreation by the operations mentioned inmates determined to be proper subjects for such treatment. The State boards and physicians and surgeons in charge of each of said institutions are constituted

a special board with authority to examine such inmates as are reported by the warden, or medical superintendent, to be persons by whom procreation would be inadvisable, and, upon the report of insanity experts, examine into the physical and mental condition of such persons, etc., determine the advisability of such operation upon them. At least 30 days' notice of the proceeding must be given the parent or guardian of such mentally defective person before performing the operation, such notice specifying the purpose, time and place of such examination. If the parent or guardian object, the matter must be referred to the probate court of the county in which the institution is located, which is then required to determine as in other cases the question of sanity and necessity of the operation. When authorized, the operation is to be performed either by the physician of the institution or an expert employed by the board for that purpose after a report has been secured from two qualified physicians that such operation is desirable in the interest of the patient or the good of the community. A record, not for public inspection, is required to be made in relation to each individual so operated upon and filed with the State board of public health.

Acting under the provisions of this act the board of control of the Michigan Home and Training School and plaintiff, its medical superintendent, as a special board for that purpose, took the proper steps and made the requisite determination for performing the operation of salpingectomy upon said Nora Reynolds. Notice of such proceeding was served upon John Roach, her guardian, who interposed written objections, contending that the act was unconstitutional and void on various grounds. Petition was thereupon filed in the probate court by plaintiff as superintendent of said institution asking that the sanity of said inmate and necessity for the proposed operation be there determined, with the result already stated.

As appears by return to the order to show cause issued from this court, the learned circuit judge, in an opinion sustaining the refusal of the probate court to take jurisdiction, expressed the view that the results sought to be reached by the act were commendable and to be desired, but, as framed and enacted, it "so limits the class of feeble minded persons who may be brought within its provisions as to almost entirely subvert its object and make it clearly class legislation," and therefore unconstitutional.

The only brief filed or argument offered in this proceeding is by the attorney general as *amicus curiæ,* apparently conceding the unconstitutionality of the act and concurring in the views expressed by the circuit judge that the validity of the legislation cannot be sustained in its present form because of the narrow and arbitrary classification adopted.

The only question argued or raised in this proceeding against the validity of the law being that it is capricious and discriminating class legislation, there is no occasion to dwell or pass upon any suggested underlying medico-legal questions to which the indicated purpose of the law points and which within constitutional limits are for legislative rather than judicial consideration. That line of inquiry in the field of forensic medicine has only incidental relation to the question here involved.

It is elementary that legislation which, in carrying out a public purpose for the common good, is limited by reasonable and justifiable differentiation to a distinct type or class of persons is not for that reason unconstitutional because class legislation, if germane to the object of the enactment and made uniform in its operation upon all persons of the class to which it naturally applies; but if it fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them

to others of like kind, by unreasonable or arbitrary sub-classification, it comes within the constitutional prohibition against class legislation. For the purposes of this case we need go no further into the subject of class legislation than to point out this distinction. For an able amplification of the topic, with abundant citation of sustaining cases, reference may be made to 6 R. C. L. subpage 373 *et seq.*

Plainly stated, the manifest purpose and only justification for this legislation is to promote, under the police power of the State, the general welfare of the human race by a step in the line of selective breeding to be effected through sterilization of those found and adjudicated by a designated tribunal to be hopelessly insane and mentally defective to such an extent that, in connection with their personal record and family history, procreation by such persons is inadvisable and inimical to public welfare.

Conceding, for the purpose of this inquiry, that such legislation is a proper governmental function and within the police power of the State, the question naturally arises, What logical connection with the object sought by this enactment has a classification which carves a class out of a class and applies the proposed curative treatment, which it is found the public weal demands and justifies, only to those of the type requiring such exclusive legislation who, by reason of their sequestration under public control, are presumably helpless to work upon those now in being or posterity the mischief which the law is framed to eliminate?

"The legislature cannot take what might be termed a natural class of persons, split the same in two and then arbitrarily designate the dissevered factions of the original unit as two classes, and thereupon enact different rules for the government of each." 6 R. C. L. p. 383.

In this enactment the legislature selected out of what might be termed a natural class of defective and incompetent persons only those already under public restraint, leaving immune from its operation all others of like kind to whom the reason for the legislative remedy is normally and equally, at least, applicable, extending immunities and privileges to the latter which are denied to the former.

While legislation is to be found in a few other jurisdictions providing for sterilization of designated abnormal classes by whom procreation is deemed inadvisable, either because mentally defective or of certain confirmed criminal tendencies, but two cases are cited or found where the subject has been before a court of last resort.

In *State* v. *Feilen,* 70 Wash. 65 (41 L. R. A. [N. S.] 419), defendant was convicted in a trial court of the State of Washington of statutory rape upon a female child and sentenced under authorizing statutes of that State to imprisonment in the penitentiary for life, and in addition thereto that the operation of vasectomy, for prevention of procreation, be performed upon him by some qualified and capable surgeon, "carefully and scientifically" under procurement by the warden of the penitentiary. The constitutionality of the statute authorizing this portion of the sentence was attacked on the ground that it provided for cruel and unusual punishment. In a carefully considered review of the subject the court reached the conclusion that such operation, when properly performed, involved little pain or danger, was not of that class of "severe, cruel and unusual punishments as disgraced the civilization of former ages" and declined to hold the law unconstitutional.

That case, while illuminating in some respects, involved primarily a question foreign to the issue before us and is of but remote application, for under

the statute involved here the proposed operation is not provided as a penalty in punishment of crime.

A sterilization law was enacted in the State of New Jersey in 1911, to which our act (No. 34 of 1913) is analogous in purpose and similar in various provisions, although that law extends the scope of its provided curative treatment to convicted rapists and other criminals convicted of such a succession of crimes as in the opinion of the authorized determining board are found stamped with confirmed criminal tendencies. It was entitled:

"An act to authorize and provide for the sterilization of feebleminded (including idiots, imbeciles and morons), epileptics, rapists, certain criminals and other defectives."

As particularly in point here, its operation was confined to inmates of the "several reformatories, charitable and penal institutions in the various counties and State." The constitutionality of the law was attacked on various grounds in a case involving the proposed operation of salpingectomy on an epileptic female named Alice Smith, an inmate of one of the designated institutions, found by the board to be permanently so afflicted that procreation by her was inadvisable. The court of last resort in that State held the law unconstitutional for the same reason urged in this inquiry. *Smith* v. *Board of Examiners of Feeble-Minded,* 85 N. J. Law, 46. Passing by certain reflections and moot suggestions in that case which need not be indorsed or considered for the purpose of the question before us, the following clearly stated reasons for holding the law invalid as discriminating class legislation are well in point here:

"It must be apparent that the class thus selected is singularly narrow when the broad purpose of the statute and the avowed object sought to be accomplished by it are considered. The objection, however, is not that the class is small as compared with the

magnitude of the purpose in view, which is nothing less than the artificial improvement of society at large, but that it is singularly inept for the accomplishment of that purpose in this respect, viz., that if such object requires the sterilization of the class so selected then *a fortiori* does it require the sterilization of the vastly greater class who are not protected from procreation by their confinement in State or county institutions.

"The broad class to which the legislative remedy is normally applicable is that of epileptics, *i.e.,* all epileptics. * * * If it be conceded, for the sake of argument, that the legislature may select one of these broadly defined classes, *i.e.,* the poor—and may legislate solely with reference to this class, it is evident that, by the further subclassification of the poor into those who are, and those who are not, inmates in public charitable institutions, a principle of selection is adopted that bears no reasonable relation to the proposed scheme for the artificial betterment of society. For not only will society at large be just as injuriously affected by the procreation of epileptics who are not confined in such institutions as it will be by the procreation of those who are so confined, but the former vastly outnumber the latter, and are, in the nature of things, vastly more exposed to the temptation and opportunity of procreation, which indeed in cases of those confined in a presumably well conducted public institution is reduced practically to *nil*."

For the foregoing reasons we are constrained to concur in the opinion of the learned circuit judge that this law as framed does not afford, in its scope, those affected by it that equal protection under the laws guaranteed by the Constitution, and so limits the class of defectives covered by its provisions as to be clearly class legislation without substantial distinction within constitutional inhibition.

The writ of mandamus prayed for is therefore denied.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, STONE, and KUHN, JJ., concurred. FELLOWS, J., did not sit.