PEOPLE v. CHAPMAN.

1. INSANE PERSONS—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS. One found to have been insane at an examination under statute relating to criminal sexual psychopathic persons and their commitment would not be subject to commitment thereunder (Act No. 165, Pub. Acts 1939).

2. SAME—FINDING OF PSYCHIATRISTS.

In report of psychiatrists, appointed by circuit court pursuant to statute relating to criminal sexual psychopathic persons and their commitment, statements that it was indicated that defendant had long indulged in perverted sex behavior, lacked inhibitions, had peculiarities, flights of fancy, numerous abnormalities and symptoms of schizophrenia while indicative of a psychopathic personality do not constitute a finding that defendant was insane, especially in view of statement in report that a diagnosis of actual psychosis was not then being made (Act No. 165, § 4, Pub. Acts 1939).

3. CRIMINAL LAW—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS— PSYCHIATRISTS' REPORT—PURPOSE.

The purpose of the psychiatrists' report under the statute relating to criminal sexual psychopathic persons and their commitment is to inform the court whether or not it was reasonable and proper to proceed with the hearing in. order to determine whether person charged with a criminal offense is a criminal sexual psychopathic person (Act No. 165, § 4, Pub. Acts 1939).

4. INSANE PERSONS—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS— PSYCHIATRISTS' REPORT—HEARING.

Report of psychiatrists that defendant who had been charged with an act of gross indecency was not then insane, although report indicated defendant's long indulgence in perverted sex behavior, his lack of inhibitions, peculiarities, flights of fancy, numerous abnormalties, and symptoms of schizophrenia, served purpose of statute relating to criminal sexual psychopathic persons and their commitment requiring such report for benefit of court about to conduct a hearing in order to determine status of defendant charged with a criminal offense (Act No. 165, §§ 1, 4, 5, Pub. Acts 1939).

(5.) SAME—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—FINDING OF FACT.

The proceedings to determine whether or not a person charged with a criminal offense is a criminal sexual psychopathic person is in many respects analogous to proceedings for commitment of a person alleged to be insane wherein question of insanity is factual and finding of trier of the facts whether it be the court or a jury is binding upon Supreme Court if there is evidence to support such finding (Act No. 165, Pub. Acts 1939).

6. CRIMINAL LAW—CRIMINAL SEXUAL PSYCHOPATHIC PERSON— JURISDICTION.

Under the statute relating to criminal sexual psychopathic persons, the circuit court has jurisdiction to conduct proceedings to determine whether or not defendant who had been charged with having committed an act of gross indecency was a criminal sexual psychopathic person and to make an order of commitment (Act No. 165, § 2, Pub. Acts 1939).

7. CONSTITUTIONAL LAW—CLASS LEGISLATION.

The legislature may make classifications of persons, provided such classifications are based on substantial distinctions, are in accord with the aims sought to be achieved, and are not arbitrary or capricious but rest on reasonable and justifiable foundations (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 1).

8. SAME—DISCRIMINATION WITHIN A CLASS.

If legislation fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them to others of like kind by unreasonable or arbitrary subclassification, it comes within the constitutional prohibition against class legislation (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 1).

9. CRIMINAL LAW—CRIMINAL SEXUAL PSYCHOPATHIC PERSON— CLASS LEGISLATION.

The statute relating to criminal sexual psychopathic persons and their commitment was not unconstitutional as a denial of equal protection because its restraints were applicable only to those charged with a criminal offense as it is a reasonable and justifiable assumption that the class of sexual psychopathic persons most dangerous and most likely to commit sex crimes is that class which engages in other criminal conduct (U. S. Const. Am. 14, § 1; Mich. Const. 1908, art. 2, § 1; Act No. 165, Pub. Acts 1939).

10. CONSTITUTIONAL LAW—LIMITED EXERCISE OF POLICE POWER.

The legislature, in the exercise of its police power and in its efforts to afford protection, may limit the scope of a statute to the eradication of evil where presumably the need is greatest, even though it might constitutionally have extended the operation of its enactment to a larger class (U. S. Const. Am. 14, § 1; Mich. Const. 1908, art. 2, § 1).

11. SAME—DELEGATION OF POWER TO COMMENCE PROCEEDINGS AS TO CRIMINAL SEXUAL PSYCHOPATHIC PERSONS.

Fact that institution of proceedings under the statute relating to criminal sexual psychopathic persons and their commitment is delegated to attorney general or the prosecuting attorney which is reasonably essential in the administration of the statute does not deny a defendant equal protection of the laws in the absence of a showing that such discretionary power has been arbitrarily and capriciously exercised (U. S. Const. Am. 14, § 1; Mich. Const. 1908, art. 2, § 1; Act No. 165, Pub. Acts 1939).

12. SAME—EX POST FACTO LAWS—STATUTES RELATING TO CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—CIVIL INQUEST.

The constitutional prohibitions against enactment of *ex post facto* laws relate only to criminal or penal statutes and hence do not apply to statutory proceedings to determine whether an individual is a criminal sexual psychopathic person at the hearing in which it is competent to introduce evidence of the commission by such person of any number of similar crimes, together with the record of the punishment therefor after which a determination may be made followed by commitment for treatment, as such proceeding is a civil inquest and not a criminal prosecution (U. S. Const. art. 1, § 9 [3]; Mich. Const. 1908, art. 2, § 9; Act No. 165, § 5, Pub. Acts 1939).

13. SAME—EX POST FACTO LAWS—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—COMMITMENT.

Statute providing for petition to be filed after a person has been charged with crime to determine whether or not accused is a criminal sexual psychopathic person, permitting introduction of evidence of the commission by the defendant of any number of similar crimes together with the record of the punishment inflicted therefor, and subjecting defendant to restraint because of acts and condition and not for conviction and sentence for a criminal offense does not offend the constitutional prohibitions against enactment of *ex post facto* laws since the proceeding is not criminal in nature and

there is not extended or imposed an added or different sentence under the guise of hospitalization (U. S. Const. art. 1, § 9 [3]; Mich. Const. 1908, art. 2, § 9; Act No. 165, §§ 3, 5, Pub. Acts 1939).

14. SAME—DUE PROCESS—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—FINDING BY COURT OR JURY—PSYCHIATRISTS' REPORT.

Statute defining who are criminal sexual psychopathic persons and providing for determination as to whether a defendant is such a person, in case a preliminary report by two psychiatrists indicates he may be, does not deny a defendant due process of law by permitting two psychiatrists and a court to declare him a ''criminal person'' where he has never been convicted of crime, as the statute clearly prescribes the standard for determining just who are criminal sexual psychopathic persons and provides that the report is only for the help and guidance of the court and that the final determination of fact be made by the court, or a jury, if demanded (Const. 1908, art. 2, § 16; Act No. 165, §§ 1–5, Pub. Acts 1939).

15. SAME—SELF-INCRIMINATION—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—CIVIL INQUEST.

Statute relating to criminal sexual psychopathic persons and proceedings for their commitment is not in conflict with constitutional provision against self-incrimination where no provision of the statute compels self-incrimination and the proceeding is not a criminal case but a civil inquest concerning defendant's mental condition and sexual deviations (Const. 1908, art. 2, § 16; Act No. 165, Pub. Acts 1939).

16. CRIMINAL LAW—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—SELF-INCRIMINATION.

Defendant who was charged with an act of gross indecency and before trial was found to be a criminal sexual psychopathic person may not claim a violation of constitutional provision as to self-incrimination where record shows no objection to the taking of testimony at the hearing for determination as to whether or not defendant was a criminal sexual psychopathic person and psychiatrists' preliminary report indicated that he spoke very readily of his life history and of his abnormal activities (Const. 1908, art. 2, § 16; Act No. 165, Pub. Acts 1939).

17. CONSTITUTIONAL LAW—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—COMMITMENT.

Detention of one declared to be a criminal sexual psychopathic person by circuit court pursuant to statute relative to such

persons, which statute enlarged jurisdiction of the State hospital commission so as to include jurisdiction of such persons, in the same hospital as insane persons who had committed or attempted to commit other crimes pursuant to other statutory provisions giving such commission jurisdiction thereof, was but a reasonable restraint upon the natural and constitutional rights of person who had been charged with an act of gross indecency and did not warrant declaration that the statute was unconstitutional or commitment unlawful (Const. 1908, art. 11, § 15; 2 Comp. Laws 1929, §§ 6878, 6879, as amended; Act No. 165, Pub. Acts 1939).

18. SAME—SEPARATION OF POWERS—COMMITMENT OF CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—COURTS—STATE HOSPITAL COMMISSION—SENTENCE—PROBATION.

Statute authorizing circuit court to commit one declared to be a criminal sexual psychopathic person to the State hospital commission which in turn is authorized to provide for his confinement in an appropriate institution under its own jurisdiction or that of the department of corrections until the defendant shall have fully and permanently recovered from such psychopathy does not encroach upon judicial authority to sentence an individual as the order of commitment is not a criminal sentence; nor upon a court's right to place an individual on probation as the proceedings are not criminal in character (Act No. 165, § 5, Pub. Acts 1939).

19. STATUTES—CONSTITUTIONAL LAW—CRUEL OR UNUSUAL PUNISHMENT—CRIMINAL SEXUAL PSYCHOPATHIC PERSON—CRIMINAL LAW.

Statute relating to criminal sexual psychopathic persons and their commitment to the State hospital commission for confinement in an institution until fully and permanently recovered from such psychopathy is not violative of constitutional prohibition against excessive bail, excessive fines, and cruel or unusual punishment since it is not a criminal statute (Const. 1908, art. 2, § 15; Act No. 165, Pub. Acts 1939).

20. CONSTITUTIONAL LAW—POLICE POWER—PUBLIC SAFETY—CRIMINAL SEXUAL PSYCHOPATHIC PERSON.

Statute relating to criminal sexual psychopathic persons and their commitment is a valid and proper exercise of the State police power as a measure of public safety (Act No. 165, Pub. Acts 1939).

21. COSTS—PUBLIC QUESTION—CONSTITUTIONALITY OF STATUTE.

No costs are allowed in case involving constitutionality of stat-

ute relating to criminal sexual psychopathic persons and
their commitment, a public question being involved (Act No.
165, Pub. Acts 1939).

Appeal from Livingston; Collins (Joseph H.), J.
Submitted January 15, 1942. (Docket No. 75, Calendar No. 41,753.) Decided May 18, 1942.

Bert Chapman was charged with an act of gross
indecency. Petition filed by prosecuting attorney
to determine whether defendant was a criminal sexual psychopathic person under the provisions of Act
No. 165, Pub. Acts 1939. Defendant committed to
the custody of the State Hospital Commission on
order of the court. Defendant appeals. Affirmed.

*Herbert J. Rushton*, Attorney General, *Edmund E.
Shepherd*, Solicitor General, *Daniel J. O'Hara*, Assistant Attorney General, and *Joe Gates*, Prosecuting Attorney, for the people.

*John G. Cross*, for defendant.

STARR, J. Defendant was arrested in September,
1940, arraigned before a justice·of the peace and
bound over to circuit court, where an information
was filed charging him with an "act of gross indecency" under Michigan penal code, Act No. 328,
§ 338, Pub. Acts 1931 (Comp. Laws Supp. 1940,
§ 17115–338, Stat. Ann. § 28.570).

Before trial on such charge in circuit court the
prosecuting attorney of Livingston county filed a
petition under Act No. 165, Pub. Acts 1939 (Comp.
Laws Supp. 1940, § 6991–1 *et seq.*, Stat. Ann. 1941
Cum. Supp. § 28.967–[1] *et seq.*), in this opinion referred to as "the statute," to determine whether defendant was a "criminal sexual psychopathic per-

son.'' As defendant attacks the constitutionality of the statute and the legality of the proceedings instituted thereunder, we quote such act in full:

''An act to define criminal sexual psychopathic persons and to provide for the commitment of such persons and the procedure therefor.

''The People of the State of Michigan enact:

''SECTION 1. Any person who is suffering from a mental disorder and is not insane or feeble-minded, which mental disorder has existed for a period of not less than one year and is coupled with criminal propensities to the commission of sex offenses is hereby declared to be a criminal sexual psychopathic person.

''SEC. 2. Jurisdiction of criminal sexual psychopathic persons charged with criminal offense is vested in the circuit courts of the State, the recorders court of the city of Detroit, and the superior court of the city of Grand Rapids.

''SEC. 3. When any person is charged with a criminal offense and it shall appear that such person is a criminal sexual psychopathic person, then the prosecuting attorney of such county, or the attorney general, may file with the clerk of the court in the same proceeding wherein such person stands charged with such criminal offense, a statement in writing setting forth facts tending to show that such person is a criminal sexual psychopathic person.

''SEC. 4. Upon the filing of such petition, the court shall appoint two qualified psychiatrists to make a personal examination of such alleged criminal sexual psychopathic person who shall file with the court a report in writing of the results of their examination together with their conclusions and recommendations. In the event that both of such psychiatrists in such report state their conclusions to the effect that such person is a criminal sexual psychopathic person, then proceedings shall be had as pro-

vided in this act prior to trial of such person upon the criminal offense with which he then stands charged.

"SEC. 5. Upon a hearing held for that purpose the court without a jury, unless a jury is demanded prior to said hearing and within 15 days after the filing of the last of said reports, shall ascertain whether or not such person is a criminal sexual psychopathic person. Upon such hearing it shall be competent to introduce evidence of the commission by such person of any number of similar crimes together with the record of the punishment inflicted therefor. If such person is determined to be a criminal sexual psychopathic person, then the court shall commit such person to the State hospital commission to be confined in an appropriate State institution under the jurisdiction of either the State hospital commission or the department of corrections until such person shall have fully and permanently recovered from such psychopathy.

"SEC. 6. The State hospital commission shall have the right to release such person upon parole to such persons and under such conditions as his condition, in the judgment of the State hospital commission, merits.

"SEC. 7. Such criminal sexual psychopathic person shall be discharged only after he shall have fully recovered from such psychopathy. At any time, when he shall appear to have so recovered, a petition in writing setting forth the facts showing such recovery may be filed with the clerk of the court by which he was committed and such court shall proceed to determine whether or not he has fully recovered from such psychopathy. Jury trial of such issue may be had, if demanded before the trial of said issue and within 15 days after the filing of such petition. If, following such hearing, such person is found to have fully recovered from such psychopathy, then the court shall order such person to be discharged from

the custody of the State hospital commission. In the event such person is found to have not fully recovered from such psychopathy, then the court shall order such person to be returned to the custody of the State hospital commission to be held under the previous commitment of such person.

"SEC. 8. No person who is found in such original hearing to be a criminal sexual psychopathic person and such finding having become final, may thereafter be tried upon the offense with which he originally stood charged in the committing court at the time of the filing of the original petition.

"SEC. 9. The State shall defray all expenses of such person while so confined in a State institution and may recover the amount so paid from such person."

In pursuance of the provisions of section 4 of the statute, the circuit court appointed two psychiatrists to examine defendant. The psychiatrists' written report, filed October 4, 1940, stated in substance that defendant was a white man, single, about 35 years old; that he readily and without restraint narrated his life history, giving detailed accounts of many abnormal sexual activities. Such report further stated, in part:

"Although there are many suggestive signs and symptoms of schizophrenia of long duration, *a diagnosis of actual psychosis (insanity) is not being made at the present time*, but further observation may establish the presence of that mental disorder.

"Diagnosis:

"1. Psychosexual deviation, homosexual (sexual psychopath).

"2. Intellectual level within average limits but impaired by emotional regression.

"3. Suggestive symptoms of simple schizophrenia.

"Recommendation:

"The prognosis of the near future appears to be unfavorable. He must be considered a distinct sexual menace and a source of serious concern in a free community not only because of his homosexual practices but also his psychosexual deviation is very likely to assume a much more ominous manifestation, that of pedophilia (the use of children as sexual objects). Although denying any advances toward children, that possibility must be gravely considered. There is little likelihood that his desire for sexual gratification by abnormal methods can be overcome soon and further activity of a similar nature may be expected if he is allowed freedom of access in a free community. Segregation in an appropriate institution for the treatment of disorders appears to be definitely indicated."

On October 22, 1940, the circuit court conducted a hearing to ascertain whether or not defendant was a "criminal sexual psychopathic person." Defendant did not demand a jury hearing as provided for in the statute. He was represented by an attorney at the hearing, at which testimony was taken. The record does not indicate objections by defendant to the taking of testimony, nor does it contain the testimony. At the conclusion of such hearing the court made the following order, which is not shown in the record but appears in defendant's brief:

"Whereas, defendant in the above-entitled cause is now charged with having, on August 26, 1940, at the city of Howell and county of Livingston, committed in private, to-wit, at the home of the said Bert Chapman, located in the said city of Howell, an act of gross indecency with another male person, to-wit, John Bates, and is now confined in the Livingston county jail;

"And whereas, the court on a petition filed by the prosecuting attorney of Livingston county appointed Dr. David P. Philips and Dr. I. N. LaVictoire, two

qualified psychiatrists, to examine the said defendant to determine if the said defendant is a criminal sexual psychopathic person;

"And whereas, the report filed in the case by the two psychiatrists appointed alleges that the said defendant is a *criminal sexual psychopathic person*; that he has been such a person for a period of more than one year and is a menace to society and should be hospitalized;

"And whereas, on a hearing this day held *in the defendant's presence and his counsel's presence* for the purpose of determining if the said defendant is a criminal sexual psychopathic person, testimony was given by witnesses that the said Bert Chapman had committed other acts of gross indecency over a period of years, in addition to his admissions of the same;

"Now, therefore, the court being duly advised in the premises, *it is hereby determined that the said defendant, Bert Chapman, is a criminal sexual psychopathic person within the meaning of Act No. 165, Pub. Acts 1939;*

"*And further the court does commit the said defendant, Bert Chapman, to the State hospital commission to be confined in an appropriate institution under the jurisdiction of either the State hospital commission or the department of corrections until such person shall have fully and permanently recovered from such psychopathy.*"

Defendant filed motion to set aside the above-quoted order of October 22, 1940. Such motion was brought on for hearing June 23, 1941, and was denied by order of the circuit court on July 9, 1941. Defendant appeals, claiming that the circuit court was without jurisdiction and that the statute is unconstitutional.

Defendant contends that the circuit court was without jurisdiction to determine that he was a criminal sexual psychopathic person because the psychiatrists' report *found him to be insane* and that, if he was insane, under the statute he could not be

committed as a criminal sexual psychopathic person.

It is undisputed that if defendant had been found to be insane, he would not have been subject to commitment. However, the pertinent part of the psychiatrists' report above quoted states:

"Although there are many suggestive signs and symptoms of schizophrenia of long duration, *a diagnosis of actual psychosis (insanity) is not being made at the present time,* but further observation may establish the presence of that mental disorder."

The psychiatrists' report indicates defendant's long indulgence in perverted sex behavior, his lack of inhibitions, peculiarities, flights of fancy, numerous abnormalities, and symptoms of schizophrenia. While these symptoms are indicative of a psychopathic personality, they do not constitute a finding that defendant was insane.

As to the distinction between a sexual psychopathic person and an insane person, see Weihofen, Insanity as a Defense in Criminal Law (1933), p. 96; Hoag on Crime, Abnormal Minds and the Law (1923), pp. 105–111; 32 Journal of Criminal Law and Criminology, p. 196; Jackson, Validity of Sex Offender Acts, 37 Michigan Law Review, p. 613; Singer & Krohn, Insanity and the Law (1924), pp. 150–161; Meagher, The Psychopathic Criminal, 42 Medico-Legal Journal, p. 33; Dixon, Psychiatric Angles of Criminal Behavior, 14 Oregon Law Review, p. 352; Recent Statutes, 39 Columbia Law Review, p. 534.

Defendant's further contention is that the circuit court was without jurisdiction to commit him as a criminal sexual psychopath, because the psychiatrists' report did not make a finding *that he was not insane,* which finding he asserts was required under section 1 of the statute.

The purpose of the psychiatrists' report was to inform the court whether or not it was reasonable and

proper to proceed with the hearing in order to determine whether defendant was a criminal sexual psychopathic person (section 4). We are satisfied the report served such purpose. It was then for the circuit court, with or without a jury, to determine whether defendant was a criminal sexual psychopath (section 5). The court concluded that the evidence adduced satisfactorily established that defendant was a criminal sexual psychopathic person within the meaning of section 1 of the statute.

The proceedings in the present case are in many respects analogous to proceedings for commitment of a person alleged to be insane. It is well settled that the question of insanity is factual and that the finding of the trier of the facts is binding upon us if there is evidence to support such finding. *In re Phillips*, 154 Mich. 139, 141, we said:

"We can no more weigh the evidence in a case when a jury has determined the question than in a case where the court has determined it. We must not be understood as holding that, if there is no testimony showing mental incapacity, that question might not be reviewed in this court by writ of error from the circuit court; but in such case the court must have before it the entire testimony, from which it must conclusively appear that there was no evidence showing incapacity."

Assuming the constitutionality of the statute (hereinafter discussed), we are satisfied that the court had jurisdiction to conduct the proceedings to determine whether defendant was a criminal sexual psychopathic person and to make the order of commitment.

Defendant next contends that the statute denies equal protection of the laws (U. S. Const., Am. 14, § 1; Mich. Const. [1908], art. 2, § 1), because it "limits the class of criminal sexual psychopathic persons who might be brought within its provisions only to

those who are charged with a criminal offense,'' and that such classification makes the statute unconstitutional as class legislation. Defendant further claims that the statute ''carves a class out of a class'' by limiting to the attorney general or the prosecuting attorney the function of instituting the necessary proceedings. Defendant cites in support of his contention the case of *Haynes* v. *Lapeer Circuit Judge,* 201 Mich. 138 (L. R. A. 1918D, 233), in which the first Michigan sterilization law, Act No. 34, Pub. Acts 1913 (2 Comp. Laws 1929, § 6657 *et seq.* [Stat. Ann. § 14.401 *et seq.*]), was declared unconstitutional on the ground that it was arbitrary class legislation. A later sterilization law, Act No. 285, Pub. Acts 1923, was held unconstitutional in *Smith* v. *Wayne Probate Judge,* 231 Mich. 409 (40 A. L. R. 515). Such two decisions are not controlling in the present case, because the present statute in question is readily distinguishable as containing none of the infirmities of the sterilization acts above mentioned.

It is well recognized that the legislature may make classifications of persons, provided such classifications are based on substantial distinctions and are in accord with the aims sought to be achieved. *Cook Coffee Co.* v. *Village of Flushing,* 267 Mich. 131; *Little* v. *American State Bank of Dearborn,* 263 Mich. 645; *Kelley* v. *Judge of Recorder's Court of Detroit,* 239 Mich. 204 (53 A. L. R. 273). However, such classification must be neither arbitrary nor capricious, but must rest on reasonable and justifiable foundations. In *Haynes* v. *Lapeer Circuit Judge, supra,* p. 141, the rule is stated:

''Legislation which, in carrying out a public purpose for the common good, is limited by reasonable and justifiable differentiation to a distinct type or class of persons is not for that reason unconstitu-

tional because class legislation, if germane to the object of the enactment and made uniform in its operation upon all persons of the class to which it naturally applies; but if it fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them to others of like kind, by unreasonable or arbitrary subclassification, it comes within the constitutional prohibition against class legislation.''

The present case presents the question of whether there was a sound and logical basis for the legislature's restricting the operation of the statute to ''criminal sexual psychopathic persons * * * charged with a criminal offense.'' It is reasonable to presume that the legislature concluded that the need for such restraint as the statute imposes was greatest among that group of criminal sexual psychopathic persons apparently predisposed to transgressions against society; that is, those persons charged with other violations of the criminal law. We believe it is a reasonable and justifiable assumption that the class of sexual psychopathic persons most dangerous and most likely to commit sex crimes is that class which engages in other criminal conduct. The legislature, in the exercise of its State police power and in its efforts to afford protection, could limit the scope of a legislative act to the eradication of evil where presumably the need is greatest, even though it might constitutionally have extended the operation of its enactment to a larger class. The question of ''equal protection'' in the present case is well within the rule stated by Chief Justice Hughes in *Minnesota, ex rel. Pearson*, v. *Probate Court of Ramsey County*, 309 U. S. 270, 274 (60 Sup. Ct. 523, 526, 84 L. Ed. 744, 126 A. L. R. 530), involving a Minnesota statute defining the term ''psychopathic personality.'' The Chief Justice said:

"Equally unavailing is the contention that the statute denies appellant the equal protection of the laws. The argument proceeds on the view that the statute has selected a group which is a part of a larger class. The question, however, is whether the legislature could constitutionally make a class of the group it did select. That is, whether there is any rational basis for such a selection. We see no reason for doubt upon this point. Whether the legislature could have gone farther is not the question. The class it did select is identified by the State court in terms which clearly show that the persons within that class constitute a dangerous element in the community which the legislature in its discretion could put under appropriate control. As we have often said, the legislature is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. If the law 'presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.'" (Citing cases, p. 275.)

See, also, *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379 (57 Sup. Ct. 578, 81 L. Ed. 703, 108 A. L. R. 1330).

The legislature restricted the application of the statute in question to that class of criminal sexual psychopathic persons who have been charged with a criminal offense, thereby restricting such act to cases *where the need is deemed to be clearest and where the evil is most apparent.* Such statute should not be overthrown because there may have been other instances to which it might have applied.

We are not impressed with defendant's argument that the statute carves a class out of a class by limiting to the attorney general or the prosecuting attorney the function of instituting the necessary proceedings. Such delegation of discretion is reasonably

essential in the administration of the statute and does not deny defendant equal protection of the laws. In the absence of a showing that such discretionary power has been arbitrarily and capriciously exercised, there can be no objection to such grant.

Defendant next contends that the statute violates the *ex post facto* provision of the Michigan Constitution (1908), art. 2, § 9, which provides:

"No bill of attainder, *ex post facto* law or law impairing the obligation of contracts shall be passed."

The portion of the statute which defendant claims violates the *ex post facto* provision is as follows:

"Upon such hearing (to determine whether an individual is a criminal sexual psychopathic person) it shall be competent to introduce evidence of the commission by such person of any number of similar crimes together with the record of the punishment inflicted therefor." (Section 5.)

Defendant's argument on this point is based on the erroneous assumption that the statute is a criminal statute and that the period of confinement is punitive.

It is well established that such *ex post facto* clause of the State Constitution and also the *ex post facto* clause of the Federal Constitution, art. 1, § 9–(3), relate only to criminal cases. *Scott* v. *Smart's Executors*, 1 Mich. 295; 16 C. J. S. p. 889; 6 R. C. L. p. 291; 8 Cyc. p. 1017. The present statute in question is not a criminal statute, nor are the proceedings under it criminal in nature. It provides for the holding of civil inquests to determine whether an individual is a criminal sexual psychopathic person. Proceedings under this statute are analogous to civil inquests for the determination of questions of insanity.

A recent decision by the Supreme Court of Oklahoma in the case of *Skinner* v. *State, ex rel. Attorney General*, 189 Okla. 235 (115 Pac. [2d] 123, 125), upholding an habitual criminal sterilization

act, is particularly applicable to the situation we are now considering. In that case the court said:

"It is contended that * * * the act constitutes a bill of attainder and is an *ex post facto* law, and is violative of Oklahoma Constitution, art. 2, § 15, and of the Federal Constitution, art. 1, § 10. These constitutional inhibitions have reference only to punishment for crime. 12 C. J. pp. 1099, 1108; 11 Am. Jur. pp. 1175, 1179. These contentions are, therefore, upon the premise that the act in question is a penal law, and that sterilization is inflicted as a punishment."

See, also, 11 Am. Jur. p. 1179, § 351, which states:

"The expression '*ex post facto* laws' is a technical one which was in use long before the Revolution and had acquired an appropriate meaning by legislators, lawyers, and authors. The phrase is one which relates *exclusively to criminal or penal statutes.*

"A statute providing for the restraint and care of the criminally insane, which was enacted after the commission of the crime, is not *ex post facto* because such a statute is not a criminal act, but rather one prescribing the treatment of insane persons."

We are not here concerned with those cases arising under the "obligation of contracts" clause and holding that a law may not be passed affecting vested property rights or creating a cause of action out of a prior transaction.

We conclude that the present statute does not offend the *ex post facto* clause of the State Constitution.

In the case of *People* v. *Frontczak,* 286 Mich. 51, the majority opinion held Act No. 196, § 1b, Pub. Acts 1937 (Comp. Laws Supp. 1937, § 17329-2, Stat. Ann. 1938 Cum. Supp. § 28.1073-[1]), unconstitutional. Such statute related to the confinement of sex deviators after conviction and sentence. The majority opinion by Mr. Justice WIEST stated, p. 58:

"We must class it where we find it placed by its authors, and we find it in the mentioned criminal code chapter relating to judgments and sentences in criminal cases.

"The attorney general contends that it is a civil proceeding and analogous to statutory inquests relative to insane prisoners, which is civil in nature.

"It is obvious that in such instances the inquest bears no relation to the conviction; jurisdiction attaches because of insanity. In the instance at bar jurisdiction is not given until after conviction and the prisoner is averred to be sane and change in confinement under sentence is contemplated for, while undergoing hospitalization, he gets credit on his sentence.

"Hospitalization with curative treatment and measures may be desirable but, *until the law makes a sane person amenable* to compulsory restraint as a sex deviator, it falls short of due process in merely providing procedure.

"Under this act defendant is under sentence for an overt sex deviation offense and, as a potential like offender, it is sought to keep him in confinement under exercise of the police power. The police power, under such circumstances, is not a civil proceeding, comparable to that in cases of insane persons."

We are satisfied that the present statute is distinguishable and contains none of the constitutional infirmities of the previous statute relating to sex deviators, which was held unconstitutional in the *Frontczak Case.* The statute involved in such case was, as stated in the majority opinion, placed in the criminal-code chapter relating to judgments and sentences in criminal cases. The present statute is not contained in either the code of criminal procedure or the penal code. It makes sex deviators subject to restraint because of their acts and condition, and not because of conviction and sentence for a

criminal offense. It does not extend or impose an added or different sentence under the guise of hospitalization. The procedure under this statute resembles a statutory inquest for the commitment of an insane person accused of a felony. (3 Comp. Laws 1929, § 17241 [Stat. Ann. § 28.967].) Proceedings under the present statute are not criminal in nature and, therefore, are not circumscribed by the constitutional and statutory limitations surrounding a person accused of, or tried for, a crime. *People* v. *Janek,* 287 Mich. 563; *In re Liggett,* 187 Cal. 428 (202 Pac. 660); *In re Bresee,* 82 Iowa, 573 (48 N. W. 991).

Defendant next contends that the present statute is unconstitutional in that it denies him due process of law guaranteed by Michigan Constitution (1908), art. 2, § 16, because it "permits two psychiatrists and also a court to declare a man a 'criminal person' who has never been convicted of a crime."

Defendant's counsel seeks to limit the language of the statute to a *"criminal person."* The statute does not use the term "criminal person," but in its title and in several sections the term *"criminal sexual psychopathic person"* is used. The two psychiatrists who made the examination and report provided for in the statute could not make a final determination that defendant was a criminal sexual psychopathic person. The psychiatrists' report is only for the help and guidance of the court in determining whether further proceedings should be conducted. Only the court or a jury, if demanded, could make a final determination as to whether or not defendant was a criminal sexual psychopathic person. We recognize that criminal sexual psychopathic persons, for whom the statute seeks to provide, are a definite abnormal type, recognized by the medical profession, who require confinement, treatment, and care, both for their own protection and for the pro-

tection of the public. Section 1 of the statute sets a standard of guidance for the court or jury as the trier of the facts.

The language of the statute is clear and definite, and does not deprive defendant of due process of law. *Minnesota, ex rel. Pearson,* v. *Probate Court of Ramsey County, supra.*

Defendant's contention that the statute in question is unconstitutional, because it "compels a person to be a witness against himself," is not tenable. Michigan Constitution (1908), art. 2, § 16, provides in part:

"No person shall be compelled in any criminal case to be a witness against himself."

Such constitutional provision is applicable only in a *criminal case.* The present proceeding is not a criminal case but is a civil inquest concerning defendant's mental condition and sexual deviations. There is no provision in the present statute compelling self-incrimination. Furthermore, the psychiatrists' report indicates that defendant made no objection to their examination, and the record shows no objection to the taking of testimony at the hearing in circuit court. The report states, in part:

"He (defendant) spoke very readily of his life history and of his abnormal activities, and little prompting was necessary to induce him to divulge his mental content. In fact, so voluble was his narrative and so ramified that it was necessary to interrupt him at intervals in order to keep him to the theme of his story.   *   *   *   However, there were numerous indications of abnormal psychic reactions manifesting themselves primarily in deviated sexual practices."

We conclude that the statute providing for a proceeding in the nature of a civil inquest to determine

whether an individual is a criminal sexual psychopathic person, is not in conflict with the constitutional provision against self-incrimination.

Defendant further contends that the statutory provision for the commitment of a criminal sexual psychopathic person "to the State hospital commission to be confined in an appropriate State institution under the jurisdiction of either the State hospital commission or the department of corrections" is unconstitutional, because it deprives him of due process of law.

Defendant argues that the State hospital commission does not have legal jurisdiction over individuals known as criminal sexual psychopathic persons and that the commission does not have jurisdiction over any State institution for the confinement of such persons.

The statute, section 5, expressly gives the State hospital commission jurisdiction over criminal sexual psychopathic persons.

The case of *Groesbeck* v. *Auditor General,* 216 Mich. 243 (21 A. L. R. 249), which defendant cites as authority for his contention that the legislature could not, by the statute in question, increase the jurisdiction of the hospital commission so as to include criminal sexual psychopathic persons, is factually and in principle distinguishable from the present case. Such case related to the authority of the legislature to prescribe duties for State constitutional officers and to compensate them for duties performed as members of the State administrative board.

We are satisfied that the legislature could, by the statute in question, enlarge the jurisdiction of the State hospital commission so as to include criminal sexual psychopathic persons.

We understand that the State hospital commission placed defendant in the Ionia State Hospital where

he is now detained. The hospital commission was given jurisdiction over Ionia State Hospital by the following statutory provisions:

"There shall be maintained within the State of Michigan the following State institutions, all of which are hereby placed under the jurisdiction and control of the State hospital commission; namely, * * * at Ionia, Michigan, a hospital for the humane, curative, scientific and economical treatment of insane persons who have committed or attempted to commit certain crimes as herein set forth, to be known as the Ionia State Hospital." 2 Comp. Laws 1929, § 6878, as amended (Comp. Laws Supp. 1940, § 6878, Stat. Ann. 1941 Cum. Supp. § 14.801).

"The State hospital commission is hereby vested with jurisdiction and control of all State institutions named in section 1 of this act and it shall be their duty to:

"First, have the general direction and control of all property and concerns of the several institutions over which they are appointed, not otherwise provided by law. * * *

"Second, take charge of the general interests of the institutions herein named and see that its design is carried into effect according to law and its bylaws, rules and regulations." 2 Comp. Laws 1929, § 6879, as amended (Comp. Laws Supp. 1940, § 6879, Stat. Ann. 1940 Cum. Supp. § 14.802).

The prosecution concedes in its brief that there is no State institution which has express authority by Constitution or statute to institutionalize criminal sexual psychopathic persons. Michigan Constitution (1908), art. 11, § 15, provides, in part:

"Institutions for the benefit of those inhabitants who are deaf, dumb, blind, *feeble-minded,* or insane shall always be fostered and supported."

The legislature, in its enactment of the present statute, was apparently confronted with the problem

of the utilization of such institutions as the State now has, or the abandonment of the proposed legislation for the detention and care of criminal sexual psychopathic persons. We believe that the problem of where such type of persons should be institutionalized was for the legislature to determine, and not for the courts. ·

In considering the matter of defendant's detention, we find guidance in the case of *Smith* v. *Wayne Probate Judge, supra*, p. 424, in which Mr. Justice McDonald said:

"The Michigan statute is not perfect. Undoubtedly time and experience will bring changes in many of its workable features. But it is expressive of a State policy apparently based on the growing belief that, due to the alarming increase in the number of degenerates, criminals, feeble-minded and insane, our race is facing the greatest peril of all time. Whether this belief is well founded is not for this court to say. Unless for the soundest constitutional reasons, it is our duty to sustain the policy which the State has adopted. As we before have said, it is no valid objection that it *imposes reasonable restraints upon natural and constitutional rights*. It is an historic fact that every forward step in the progress of the race is marked by an interference with individual liberties."

We conclude that the statute here in question "imposes *reasonable* restraints upon natural and constitutional rights" of defendant. His detention in the Ionia State Hospital does not warrant our declaring the statute unconstitutional or his commitment unlawful.

Defendant's counsel contends that the statute in question encroaches upon judicial authority. In his brief it is stated:

"There is nothing in our general statutes which provides that the court can *sentence* an individual or

commit an individual to a commission and allow that commission to determine to what institution he shall be committed."

The order of the circuit court committing defendant to the State hospital commission was not a criminal sentence. It provided for defendant's confinement "in an appropriate institution under the jurisdiction of either the State hospital commission or the department of corrections" until he "shall have *fully and permanently recovered* from such psychopathy." The legislature could empower the hospital commission as an appropriate body to determine the place of confinement for a person determined by the court to be a criminal sexual psychopathic person. The statute does not encroach upon judicial authority.

Defendant's argument that the statute encroaches upon the jurisdiction of the court, because it eliminates the right of the court to place the individual on probation, is without foundation. Such argument is postulated on the erroneous assumption that the present proceedings are criminal in character.

Defendant's contention that the statute violates the State Constitution (1908), art. 2, § 15, prohibiting excessive bail, excessive fines, and cruel or unusual punishment is likewise based upon the mistaken premise that it is a criminal statute.

Defendant does not claim that the statute is an improper exercise of State police power. Though the question is not directly raised, we are satisfied that the statute is a valid and proper exercise of State police power as a measure of public safety. *Buck* v. *Bell*, 274 U. S. 200 (47 Sup. Ct. 584, 71 L. Ed. 1000); *Zucht* v. *King*, 260 U. S. 174 (43 Sup. Ct. 24, 67 L. Ed. 194); *Jacobson* v. *Massachusetts*, 197 U. S. 11 (25 Sup. Ct. 358, 49 L. Ed. 643); *Compagnie Francaise de Navigation a Vapeur* v. *Louisiana State*

*Board of Health,* 186 U. S. 380 (22 Sup. Ct. 811, 46 L. Ed. 1209); *Lindsay* v. *Lindsay,* 257 Ill. 328 (100 N. E. 892, 45 L. R. A. [N.S.] 908, Ann. Cas. 1914A, 1222); *People* v. *Niesman,* 356 Ill. 322 (190 N. E. 668); 39 Columbia Law Review, pp. 534–537.

We conclude that the statute in question is constitutional and that the proceedings in the present case were regular and proper.

The circuit court order of July 9, 1941, denying defendant's motion to set aside the court order of October 22, 1940, is affirmed. A public question being involved, no costs are allowed.

CHANDLER, C. J., and BOYLES, NORTH, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.