PEOPLE v PALAZZOLO

(PEOPLE OF THE CITY OF FERNDALE v PALAZZOLO)

Opinion of the Court

1. Gaming—Criminal Law—Ordinances—Constitutional Law—
   Due Process—Pinball Machines—Gaming Devices.

   A city ordinance enacted 34 years ago which prohibits the main-
   tenance of a pinball machine or gaming device in a place of
   business does not meet the due process standards required of a
   criminal ordinance because in light of the changes which have
   taken place in the field of coin-operated amusement machines
   the ordinance is vague and ambiguous and does not inform the
   citizen with reasonable precision what acts it intends to pro-
   hibit; modern pinball machines are considerably different from
   the pinball machines which existed when the ordinance was
   enacted and the modern machines are not "pin-ball machines"
   within the specific language of the ordinance and are not
   gaming devices within the general language of the ordinance.

2. Constitutional Law—Due Process—Statutes—Vagueness.

   A statute which either forbids or requires the doing of an act in
   terms so vague that men of common intelligence must necessar-
   ily guess at its meaning and differ as to its application, violates
   the first essential of due process of law.

3. Gaming—Criminal Law—Ordinances—Pinball Machines—Gam-
   ing Devices—Elements of Crime—Reasonable Doubt—Bur-
   den of Proof.

   Failure by the prosecution to prove beyond a reasonable doubt
   that a pinball machine was capable of being used for gambling
   or that any opportunity existed to win a free replay does not
   sustain a defendant's conviction for maintaining a pinball
   machine or gaming device contrary to a city ordinance; the
   basic principle of criminal law is that the prosecution must

References for Points in Headnotes
[1, 3, 5, 6] 38 Am Jur 2d, Gambling § 87 *et seq.*
[2] 16 Am Jur 2d, Constitutional Law § 552.
[4] 16 Am Jur 2d, Constitutional Law § 513 *et seq.*

prove each and every element of the crime beyond a reasonable doubt.

4. CONSTITUTIONAL LAW—EQUAL PROTECTION—STATUTES—REASONA-
   BLE CLASSIFICATIONS.

   The Legislature may make classifications of persons and legisla-
   tion does not violate the equal protection clauses of the Federal
   and State Constitutions where such classifications are based on
   substantial distinctions and are in accord with the aims sought
   to be achieved; however, such classification must be neither
   arbitrary nor capricious, but must rest on reasonable and
   justifiable foundations.

5. CONSTITUTIONAL LAW—EQUAL PROTECTION—ORDINANCES—CLASSIFI-
   CATIONS—GAMING DEVICES—PINBALL MACHINES—BOWLING AL-
   LEYS.

   A city ordinance which prohibits the maintenance of pinball
   machines and gaming devices in a place of business but ex-
   empts the maintenance of bowling alleys violates equal protec-
   tion of the laws because pinball and bowling are similar in the
   crucial aspect of winning free throws of the ball.

                   DISSENT BY R. M. MAHER, J.

6. GAMING—CRIMINAL LAW—PINBALL MACHINES—ORDINANCES—
   VAGUENESS—AMBIGUITY.

   *A coin-operated pinball machine, which gives a player free plays
   only when that player achieves a sufficiently high score on the
   machine, is a gambling device, and a city ordinance which
   specifically prohibits the maintenance of pinball machines in a
   place of business is not vague or ambiguous.*

Appeal from Oakland, James S. Thorburn, J.
Submitted Division 2 April 17, 1975, at Detroit.
(Docket No. 21302.) Decided June 11, 1975. Leave
to appeal denied, 395 Mich —.

Vincent J. Palazzolo was convicted in district
court of maintaining a pinball machine contrary
to an ordinance of the City of Ferndale. Defendant
appealed to the circuit court. Affirmed. Defendant
appeals by leave granted. Reversed.

*Turner, Mead & Wilson,* Ferndale City Attorneys, for the people.

*Perica, Briethart, Wolanin & Carmody, P. C.* (by *Edward J. Gallagher II),* for defendant.

Before: J. H. GILLIS, P. J., and QUINN and R. M. MAHER, JJ.

J. H. GILLIS, P. J. Defendant was tried before a district judge on a charge of maintaining a pinball machine contrary to Ferndale Ordinance 200, § 2. He was found guilty on February 4, 1974, and sentenced to pay a $100 fine and $4 costs. Defendant appealed to Oakland County Circuit Court. Judgment was affirmed. Defendant now appeals his conviction to this Court by leave granted.

Section 2 of Ferndale Ordinance 200 reads as follows:

"No person, his agent or employee, shall for hire, gain or reward, keep or maintain in a place of business in the City of Ferndale a gaming room or a gaming table or any game of skill or chance, or partly of skill and partly of chance, used or capable of being used for gaming, or knowingly suffer a gaming room or gaming table or any such games to be kept, maintained or played on any such premises occupied or controlled by him. Games such as 'box-ball' or 'pin-ball' machines, so-called, are hereby declared to come under the prohibition herein contained."

In this case we are dealing with a 34-year-old ordinance. The language of the ordinance has remained the same, while the condition of the world, or at least the condition of pinball machines, has changed. The result is that the provision does not meet the due process standards required of a criminal ordinance.

In order to understand how this came about, it is necessary to survey the history of the pinball machine and contrast its nature at two points in time: in 1941, when the ordinance was passed, and today, when we must apply it to the case at bar.

In 1941, pinball machines were only a few years removed from their slot machine heritage. The operation of these early pinball machines is described in the case of *Oatman v Port Huron Chief of Police,* 310 Mich 57, 58; 16 NW2d 665 (1944):

"The person playing the machine deposits a five-cent coin which causes a lever to drop, a ball is propelled up a slight slope and its progress down again is interrupted by pins or bumpers, different lights and gadgets are lighted up and the downward course of the ball, which is entirely by chance or with a slight variation by reason of acquired knowledge and skill on the part of the player, determines whether the player is lucky or has obtained a favorable result in scored points. The skill of the player in any event is a very slight factor in changing the result.

"The machine is of the type generally used and well recognized as a gambling device."

The case at bar would come squarely within the holding of *Oatman* were it not for the fact that pinball machines are considerably different today from those described in *Oatman.* Modern pinball machines involve skill to a much greater extent because of the addition of "flippers". Flippers are bars operated by a pushbutton which can be used to flip the ball upwards, back into the playing field, thus keeping the ball in play longer and enabling the player to attain a higher score. Thus the difference between the old-style and modern pinball machines is apparent. Attaining a high score in the old-style flipper-less game depended almost completely on chance. A modern pinball

machine, however, armed with one or more pairs of flippers, allows for a much greater variance in scores, depending on the player's skill in manipulating the flippers.

Defendant is attacking his conviction on several grounds. One ground is that the ordinance is vague and ambiguous. At first glance it may seem absurd to say that pinball machines are not prohibited by an ordinance which prohibits pinball machines. However, the Supreme Court in the *Oatman* case elucidated for us precisely what the pinball machine was, as it was "generally used" in 1944. Therefore, it is clearly demonstrated that modern pinball machines are not "pin-ball machines" within the specific language of the ordinance.

Further, modern pinball machines are not gaming devices within the meaning of the general language of the ordinance. The addition of flippers to pinball machines, which has occurred since the passage of the ordinance in question and since the decision in the *Oatman* case, has so enhanced the skill aspect of the game that an ordinance drafter who prohibited gambling devices in 1941 would not have intended to prohibit modern pinball machines.

In *People v Austin,* 301 Mich 456, 463; 3 NW2d 841, 844 (1942), the Court said:

" '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' *Connally v General Construction Co,* 269 US 385, 391; 46 S Ct 126; 70 L Ed 322 (1926)."

See also *People v Goulding,* 275 Mich 353, 358; 266 NW 378 (1936).

In light of the changes which have taken place in the last 30 years in the field of coin-operated amusement machines, we must conclude that the ordinance is vague and ambiguous because it does not inform the citizen with reasonable precision what acts it intends to prohibit.

Furthermore, the prosecution in this case failed to show that the pinball machine in question was even capable of being used for gambling. The only testimony was that of a 17-year-old youth and a police detective. The police detective, who professed no prior experience in playing pinball machines, stated only that he played a single game and was unable to win a free replay. The young man testified that he and his friends played pinball frequently, but had never succeeded in winning a free replay by attaining the requisite high score.

The only conclusion supportable from this evidence is that either it is impossible to win a free replay, in which case there cannot be any gambling involved because there can be no prize, or it takes more skill than the detective and the young man possessed in order to attain a high enough score to earn a free replay.

In either event, it is clear that the prosecution has failed to prove beyond a reasonable doubt that any opportunity to win a free replay even existed. No legal authority is necessary to support the basic principle of our criminal law that the prosecution must prove each and every element of the crime beyond a reasonable doubt.

In addition, the defendant also alleges that the classifications created by the ordinance are arbitrary and unreasonable and violate the equal protection clauses of the United States Constitution, US Const, Am XIV, § 1, and the Michigan Constitution, Const 1963, art 1, § 2.

In § 4 of the ordinance, the City of Ferndale exempts a number of games:

"Nothing in this Ordinance contained shall be construed as prohibiting the keeping and use of pool tables, billiard tables, and bowling alleys and their usual appurtenances in places duly licensed and operated under applicable ordinances of the City of Ferndale."

In *People v Chapman,* 301 Mich 584, 597–598; 4 NW2d 18, 24 (1942), a statute was challenged as denying the defendant therein equal protection of the laws. Justice STARR, writing for the Court, stated:

"It is well recognized that the legislature may make classifications of persons, provided such classifications are based on substantial distinctions and are in accord with the aims sought to be achieved. (Citations omitted.) However, such classifications must be neither arbitrary nor capricious, but must rest on reasonable and justifiable foundations. In *Haynes v Lapeer Circuit Judge,* [201 Mich 138, 141; 166 NW 938, 940 (1918)], the rule is stated:

" 'Legislation which, in carrying out a public purpose for the common good, is limited by reasonable and justifiable differentiation to a distinct type or class of persons is not for that reason unconstitutional because class legislation, if germane to the object of the enactment and made uniform in its operation upon all persons of the class to which it naturally applies; but if it fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them to others of like kind, by unreasonable or arbitrary subclassification, it comes within the constitutional prohibition against class legislation.' "

See also *Fox v Employment Security Commission,* 379 Mich 579, 588–589; 153 NW2d 644, 647–648 (1967).

A simple statement of the rule of equal protection of the law is that lawmakers must treat like things in a like manner. A quick look at the game of bowling, which is exempted under this ordinance, will reveal that it is very similar to the game of pinball as played on defendant's machine.

A single bowling game costs the player a flat fee. This fee permits the bowler to bowl ten frames. However, for those bowlers who score a strike or spare in the tenth frame, an extra roll is permitted for the same fee. This is indistinguishable from the case where a skillful pinball player is able to negotiate a free replay, which is nothing but the opportunity to play with additional pinballs for the same 25-cent fee, by attaining a sufficiently high score in a particular game.

Therefore, since bowling and pinball are so much alike, especially in the crucial aspect of winning free throws of the ball, we must conclude that exempting one of them from the prohibition of the ordinance, while including the other, is a violation of equal protection of the laws.

Because this ordinance fails to fulfill the requirements of due process of law, because the prosecution has failed to prove each and every element of the crime, and because the ordinance violates the principle of equal protection, we reverse.

QUINN, J., concurred.

R. M. MAHER, J. *(dissenting)*. I respectfully dissent. The Michigan Supreme Court has held, in *Oatman v Port Huron Chief of Police,* 310 Mich 57; 16 NW2d 665 (1944), that a coin operated pinball machine, which gives a player free plays only when that player achieves a sufficiently high score on the machine, is a gambling device. The ordinance in question specifically prohibits pinball

machines. The ordinance is not vague or ambiguous. The ordinance in question allows bowling. This is not an unreasonable distinction.

As for the evidence in this case, the testimony showed that a small sign on the pinball machine offered free plays upon the attainment of a certain score. The prosecution proved its case. I would affirm.