### PEOPLE *v.* HOLNAGEL.

1. CRIMINAL LAW—CRIMINAL SEXUAL PSYCHOPATHIC PERSON—SUFFI-
CIENCY OF PETITION—DURATION OF MENTAL DISORDER.
   Petition for declaration that one accused of crime was a criminal sexual psychopathic person was insufficient, where it failed to claim that his mental disorder had existed for 4 months, a statutory prerequisite, or any other period of time, and thus fails to show that the offense was committed because of such disorder, an allegation of pendency of the criminal action in which the petition has been filed availing nothing to satisfy the statutory requirement as to content of the petition (CLS 1956, § 780.503).

2. SAME—CRIMINAL SEXUAL PSYCHOPATHIC PERSON—SUFFICIENCY OF
PETITION.
   Statement by petitioner, a married man, for declaration that he be adjudged a criminal sexual psychopathic person, that he has had an unnatural desire for sexual intercourse with women that were strangers to him, a conclusionary statement, and that during the last year he had had sexual intercourse with strangers on at least 12 different occasions without claiming there was anything criminal or psychopathic about the occurrences *held,* insufficient to support conclusion of criminal sexual psychopathy (CLS 1956, § 780.503).

---

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 14 Am Jur, Criminal Law § 32 *et seq.;* 15 Am Jur, Criminal
Law §§ 310, 311.

3. Same—Criminal Sexual Psychopathic Person—Psychiatrists —Trial Judge.

The judgment of the doctors who are appointed by the court to examine person accused of crime and who seeks declaration that he be determined to be a criminal sexual psychopathic person is not to be substituted for the judgment of the court as the function, prescribed by statute, for the psychiatrists, is to examine the defendant and report to the court and the court makes the determination (CL 1948 and CLS 1956, § 780- .501 *et seq.*).

4. Same—Criminal Sexual Psychopathic Person—Finding of Court—Preponderance of Evidence.

Finding of trial court that defendant, a married man, charged with kidnapping a woman whom he thereafter sexually molested, was not a criminal sexual psychopathic person, notwithstanding unanimous report of 3 psychiatrists that he was, *held*, not against the preponderance of the evidence, where one of the psychiatrists testified their information was obtained solely from the petitioner-defendant, that he was not corroborated notwithstanding his history of being a liar, the testimony given at such hearing also being hearsay (CL 1948 and CLS 1956, § 780.501 *et seq.*).

Appeal from Bay; Smith (Richard G.), J. Submitted May 16, 1963. (Calendar No. 58, Docket No. 49,948.) Decided October 10, 1963.

Frederick Holnagel, charged with kidnapping, filed a petition praying that he be declared a criminal sexual psychopathic person. After psychiatric examination and hearing in court petition denied. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, and *Martin B. Legatz*, Prosecuting Attorney, for the people.

*Bartlett, King, Learman & Peters* (*William E. Peters*, of counsel), for defendant.

Dethmers, J. Defendant was awaiting trial in circuit court on a charge of kidnapping. He filed

a petition praying for psychiatric examination and that he be declared a criminal sexual psychopathic person under PA 1939, No 165, as amended (CL 1948 and CLS 1956, § 780.501 *et seq.* [Stat Ann 1954 Rev § 28.967(1) *et seq.*]), hereinafter called the act. It was dismissed for insufficiency, but defendant was permitted to file an amended petition. The court then appointed 3 psychiatrists to examine defendant and report to the court. A hearing was had at which 1 of the 3 psychiatrists testified. The court determined that defendant was not a criminal sexual psychopathic person and denied his petition that he be found so to be. From that denial defendant appealed here. Thereafter he entered a plea of guilty to the kidnapping charge and was sentenced to prison where he now is.

The court based its denial of the petition on 2 grounds: first, that the petition was insufficient, and, second, that the proofs did not suffice.

The pertinent portions of the petition follow:

"1. That the defendant herein, Frederick Holnagel, is charged in this court with having committed the following offense, to-wit: Kidnapping Lou Ann Wieland, on or about the 8th day of August, 1961, at circuit court, in said county, and is now awaiting trial therefor, all as more fully appears from the records and files of this court in said cause.

"2. Your petitioner further shows that said defendant, Frederick Holnagel, a married man with a family to support, has had an unnatural desire to have sexual intercourse with women that were strangers to him. This unnatural desire resulted in his having sexual intercourse on at least 12 different occasions during the last year with women who were strangers or casual acquaintances, and resulted in the criminal, sexual molesting of Lou Ann Wieland, a total stranger to him, on August 8, 1961. On that

date, he entered her home, abducted her, and took her to a secluded location in Bay county, where he sexually molested her."

Section 3 of the act makes existence of the mental disorder for 4 months a prerequisite. The first above paragraph in defendant's petition, relative to the offense of which he stood charged, alleges nothing causing it to appear that the claimed mental disorder antedated commission of the offense for 4 months or any other period of time, and thus fails to show that the offense was committed because of such disorder. An allegation of pendency of the criminal action in which the petition has been filed avails nothing to satisfy the statutory requirement as to content of the petition. *In re Kelmar,* 323 Mich 511; *In re Carter,* 337 Mich 496.

The second above paragraph of defendant's petition states that the desire for sexual intercourse which he has had is "unnatural". That is not, as section 3 of the act requires, a statement of "facts tending to show" but merely an expression of conclusion. He alleges that during the last year he had had sexual intercourse on at least 12 different occasions with women who were strangers or casual acquaintances. Whether or not they were members of what has been termed "the most ancient profession in the world"*, or otherwise willing and cooperative strangers or casual acquaintances to whose tender and inviting embraces he succumbed, is not indicated, nor is it made to appear that there was anything either criminal or psychopathic about the occurrences. These allegations are not those of facts tending to show (section 3 of act) or from which a conclusion of criminal sexual psychopathy could reasonably or properly be drawn. *In re Carter, supra; In re Kader,* 350 Mich 63. The peti-

---

* Kipling, Soldiers Three (1888), On the City Wall, p 283.

tion contained nothing else to serve that purpose. It was, therefore, insufficient. Dismissal thereof, without appointment of psychiatrists or hearing thereon, would have been proper. Had the court dismissed at that juncture, our task might well have been considered ended at this point, with affirmance on that score.

Inasmuch, however as the court granted the petition to the extent of appointing psychiatrists and allowing a hearing on it, we consider the further question, urged by defendant, whether the court erred in finding that the proofs did not suffice to show that defendant was a criminal sexual psychopathic person. As defendant's brief properly states, the basic question in this connection is whether the judge's finding is against the clear preponderance of the evidence. What did the court have before it?

The unanimous report of the 3 psychiatrists contained, in substance, the following, gained exclusively from defendant's own assertions: (1) that defendant, throughout his adult life, has been subject to excessively strong sexual urges, especially when under the influence of alcohol; (2) that he estimates that he has had extramarital sex relations with 150 different women; (3) that he estimates he has intercourse 15 or 20 times per month, 2 with his wife; (4) that he admitted to them guilt of a rape charge of which he had been acquitted; (5) that he admitted a sex offense with another woman; (6) that, as a result of their examination, they were unanimously of the opinion that defendant was a criminal sexual psychopathic person.

One of the 3 psychiatrists was called and was the only witness who testified at the hearing. He identified the report and it was received into evidence. He then testified that the psychiatrists' opinion and report were based upon a conversation with and questioning of defendant by them for 1 hour; that

defendant, in response to their questions, told them the things stated in the report, and that all of the pertinent things he told them are in the report; that they could not exclude deception on defendant's part but that he, the testifying psychiatrist, believed defendant because defendant had nothing to lose by telling the truth and concealment would be of no value to him; that, "We received a history from him that he was capable of telling lies or resorting to deception in reference to his behavior outside the home and in reference to his wife. In other words, some of his activities regarding other women he wouldn't care to be truthful with her about. There had been other areas of deception. For example, he might tell her he made $100 where actually he made $140. We felt this tendency to distort the truth at times was indicative of a personality weakness"; that defendant said he could resist the sex urge when sober but not when intoxicated; that, in the said psychiatrist's mind, this was a noncompulsive urge indicative of mental illness and that that was about the extent of what he could add so far as defendant's mental illness was concerned; that no physical examination of defendant was made; that tests by psychiatrists, upon which they base their conclusions, consist of questioning the patient and learning from police about his criminal record, if any; that there is no objective way to tell whether defendant was faking in what he told them; that the procedure of psychiatrists as here conducted "is weak in terms of an individual who denies it. This is where the procedure is very weak, and if we have no background information we would be unable to come to a conclusion"; that "I pointed out that he had a tendency to tell lies."

The function, prescribed by the statute, for the psychiatrists was to examine defendant and report to the court. See section 4 of the act. Section 5

provides that the court shall ascertain whether the defendant is a criminal sexual psychopathic person. We had occasion to say, in *People* v. *Artinian,* 320 Mich 441, that the judgment of the doctors is not to be substituted for that of the court in this regard. In the case of *In re Fidrych,* 331 Mich 485, 488, we said:

"It is the probate judge, not the physicians, who must make the determination of feeble-mindedness; it must be predicated upon a showing of facts, not merely upon the opinions of others, whether laymen or physicians."

In the instant case the trial judge, in his opinion, said of the conclusion of the psychiatrists, that they "failed to reach that conclusion on facts necessary to satisfy the law of this State". With all the evidence on the subject resting on defendant's own statements, the court had occasion to observe the following: (1) that the testifying psychiatrist stressed defendant's propensities for and history of being a liar; (2) that the psychiatrist thought, however, that defendant had told them the truth because he had nothing to gain by lying or to lose by telling the truth, in which fallacious thinking the psychiatrist was clearly ignorant of the law or facts, as recognized by the trial court in his opinion in this case and by this Court in *People* v. *Hilles,* 327 Mich 124, in which we commented, as did the trial judge here, on the possible motivating effects upon defendant of the statutory provision for hospitalization rather than imprisonment, with a possible early release after psychiatric determination of a new-found cure and immunity from subsequent prosecution on the offense charged if he were ascertained to be a criminal sexual psychopathic person, of which defendant appeared to be fully aware and appreciative in view of his petition; (3) that the psychiatrist's testimony

concerning the standard methods for examining and determining a state of criminal sexual psychopathy was so vague and confused as to be utterly unpersuasive of its efficacy; (4) that the psychiatrist further testified that there is no objective way of making the test or finding out whether defendant was faking, that the procedure is weak in terms of an individual who denies offenses and without background information such as "a history either elicited from the police files or from an admission by the defendant or complaints by other persons as to sex acts  *  *  *  we would be unable to come to a conclusion" and yet here he admitted they had no such background information except for defendant's own statements; (5) that defendant first alleged in his petition that during the last year he had had sexual intercourse on at least 12 different occasions with strangers or casual acquaintances, and then, in a more expansive mood, told the psychiatrists that he had sexual relations with 150 women, finally raising it to 15 or 20 times per month, which would make a total of 180 to 240 during the last year, less 24 with his own wife, all of which claims are hardly consistent and apparently struck the trial judge as more given to boastfulness than to truthfulness and, at all events, reflecting a preference for hospital rather than prison accommodations; (6) that as to 1 specific offense of which defendant admitted his guilt to the psychiatrists he was acquitted and as to the other there is no showing of a police record pertaining thereto or that complaint was ever made nor was the victim or any other with knowledge thereof produced to corroborate; (7) that of his other self-proclaimed feats, whether 12 per year, 150, 180, or 240, so far as the record discloses, not a whisper of complaint or corroboration was forthcoming from victims, authorities, or other persons who might have known. The court appears to have concluded that his vary-

ing claims in this connection mark him not so much for psychopathy, or even remarkable sexual prowess or potency, as for prevarication. Shall we say, under such circumstances and state of the record, that the court erred in not believing defendant and in deeming the conclusion of the psychiatrists to have had no foundation in fact or that his finding is against the clear preponderance of the evidence? We think not!

Defendant quotes from *In re Pryor,* 335 Mich 212, in furtherance of his contention that a defendant's statements to the examining psychiatrists and their report thereof to the court can be sufficient to support a court finding that defendant is a criminal sexual psychopathic person. Defendant says that the statements he made to the psychiatrists here constituted "material" in excess of that available to the court in *Pryor* and would, therefore, be sufficient to support a court finding of criminal sexual psychopathy in the instant case. They do not, however, preclude an opposite finding. Defendant fails to note that in *Pryor* the prosecuting attorney was the petitioner and that in the appeal before this Court the defendant was attacking the proceeding and proofs as defective and insufficient. Here the situation is reversed, defendant being the petitioner and the prosecuting attorney opposes the petition. While the burden of proof in *Pryor* was on the people, here it is on defendant. The trial court found that he did not sustain it. The reversed positions of the defendants in the 2 cases also transforms what were admissions against interest by defendant to the psychiatrists in *Pryor* into self-serving statements to the psychiatrists in the case at bar, which, coming to the court only from the lips of the psychiatrist, suffer from the additional infirmity of being hearsay. The finding of the trial court that defendant is not a

criminal sexual psychopathic person is not contrary to the clear preponderance of the evidence. Affirmed.

Carr, C. J., and Kelly, Smith, and O'Hara, JJ., concurred with Dethmers, J.

Black and Kavanagh, JJ., concurred in result.

Souris, J. (*concurring*). In *People* v. *Wingeart,* 371 Mich 264, I wrote for reversal because of the trial judge's rejection of unanimous opinion testimony of psychiatrist that defendant was insane at the time of commission of the criminal acts charged. Here, another trial judge sitting without a jury likewise has rejected opinion testimony (that defendant is a criminal sexual psychopath), but in this case I believe our appellate duty is to affirm.

Unlike *Wingeart,* a criminal appeal in which our function was to determine whether the trial judge's finding of sanity was supported by evidence beyond a reasonable doubt, this proceeding under PA 1939, No 165, as amended (CL 1948, § 780.501 *et seq.* [Stat Ann 1954 Rev § 28.967(1) *et seq.*]), is in the nature of a civil proceeding. *People* v. *Chapman,* 301 Mich 584, 604. Our function here, as Mr. Justice Dethmers notes, is to determine whether the judge's finding is against the clear preponderance of the evidence. I am not persuaded that it is.

In *Wingeart,* it was my conclusion that the trial judge's grounds for rejecting the psychiatrists' testimony of defendant's insanity were erroneous and, therefore, that the evidence in the case, including the testimony of the psychiatrists, did not support his finding that defendant was sane beyond a reasonable doubt. Here, however, I conclude that the trial judge properly refused to give the psychiatric evidence any weight, without which evidence there could

be no valid finding that defendant was a criminal sexual psychopath. The psychiatrist witness himself recognized that defendant had a tendency to distort the truth but, nevertheless, did nothing which appears in this record to verify defendant's statements on which his opinion, and that of his associates, was solely based. All 3 psychiatrists appointed by the court to examine defendant did so together, spending no more than a little over 1 hour with him. Notwithstanding their awareness of his proclivity for lying and deception, as far as this record is concerned they made no effort to verify his statements to them,—by interviewing family members or others familiar with defendant or by repetitive interrogation to test the internal consistency of his statements, such as was done by the psychiatrists in *Wingeart.* Ample reason exists, of record from the mouth of the psychiatrist witness himself, for rejecting his opinion testimony.

Under these circumstances, I cannot say that this record would support a commitment under the act, let alone that the judge's finding was against the clear preponderance of the evidence.