[Crim. No. 15925.   Second Dist., Div. One.   Aug. 8, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. RONNIE DUANE MORROW, Defendant and Appellant.

Paul A. Jacobs, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Rose-Marie Gruenwald and Howard Lee Halm, Deputy Attorneys General, for Plaintiff and Respondent.

FOURT, Acting P. J.—This is an appeal from a judgment of conviction of two counts of driving a motor vehicle while under the influence of an amphetamine. The notice of appeal states that the appeal is "from the judgment entered herein on August 22, 1968."

In an information filed on May 28, 1968, in Ventura, defendant was charged in count I with driving a vehicle upon a highway on March 21, 1968, while he was under the influence of amphetamine (a violation of § 23105, Veh. Code); count II charged that defendant possessed a dangerous drug on March 21, 1968 (a violation of § 11910, Health & Saf. Code); count III charged as a separate offense from that alleged in count II

that defendant possessed a dangerous drug on March 21, 1968; count IV·charged that on March 21, 1968, defendant possessed a restricted, dangerous drug for sale and count V charged that defendant drove a vehicle upon the highway on April 11, 1968, while under the influence of an amphetamine. It was further charged that defendant previously, namely on June.18, 1963, had been convicted of the crime of violation of section 11530, Health and Safety Code (possession of marijuana).

The public defender was appointed to represent defendant and defendant pleaded not guilty to each count as charged and denied the charged prior offense. A motion was made by counsel under the provisions of section 1538.5, Penal Code and subsequently was withdrawn. On July 16, 1968, at the time of the start of the trial the deputy district attorney, for some reason not apparent from the record, moved to strike counts III and IV (the latter being the most serious of the charges) and to renumber count V as count III. That motion was granted. Defendant then admitted the charged prior conviction. Defendant had served a term in the state prison on the prior felony and was on parole at the time the offenses herein charged were committed.

In a jury trial in which defendant was represented by private counsel he was found guilty as finally charged in the information as amended. Defendant made an application for probation. A date was set for the pronouncement of judgment.

A résumé of some of the facts is as follows: Deputy Sheriff Taylor of the narcotics detail was an expert in the investigation of dangerous drug use and had examined many persons who were suspected of being under the influence of or who were using Methedrine, a dangerous drug sometimes referred to as "speed." Apparently this drug is sometimes injected intravenously as a liquid and a person under its influence will exhibit dilated pupils, will be restless and nervous and will display a hyperactive disposition. On March 21, 1968, at about 8:45 p.m. Taylor and another officer were parked in an unmarked police vehicle across from La Barranca Motel in Ventura. The officers had the motel under surveillance and they saw appellant with two other persons leave the motel, get into a white Cadillac car and drive away with appellant doing the driving. Taylor knew that the car belonged to appellant and he could see that the car was being· driven without the headlights turned on. Information from the Department of Motor

Vehicles previously received had revealed that appellant's driving privilege had been suspended. Taylor radioed a request to other officers that appellant's car be stopped.

Deputy Sheriffs Haynie and Dye were engaged in patrolling activities at about 8:50 p.m. March 21, 1968, and received the radio call of Taylor. Haynie was advised of appellant's position, of the suspended license and of the inoperative headlights; further Haynie knew appellant as he had had 10 or 12 contacts with him in the past. Haynie saw appellant's car and as he followed it, he turned on a flashing red light whereupon appellant accelerated the speed of his car, turned on the headlights and quickly turned into a parking lot of an oil service station. The officer pursued appellant's car and both cars stopped; appellant got out from the driver's side of the Cadillac and approached Haynie. Appellant was angry, nervous and excited. The pupils of his eyes were dilated. Taylor shortly thereafter arrived at the parking lot and made a physical check of appellant. The pupils of appellant's eyes were observed to be dilated, he was restless and had difficulty in standing still, his speech was rapid and his arms revealed several inflamed red, fresh puncture marks. Appellant was then placed under arrest and a subsequent search for contraband and weapons revealed that appellant had in a shirt pocket three plastic bags each of which contained a white powdery substance (Methedrine or ''speed'').

During a subsequent examination at the jail, appellant refused to give a urine sample. Photographs were later taken of appellant's arms which depicted the fresh puncture marks, and part of a police report was prepared by Taylor with reference to the location and condition of the marks. Throughout the examination appellant was talkative, restless and unable to sit still; Taylor formed the opinion that appellant was under the influence of an amphetamine to the extent that his ability to drive a car was appreciably impaired.

Appellant was also examined by Officer Peebles of the narcotics detail of the Ventura Police Department and for the reasons heretofore stated and related he also thought appellant was under the influence of an amphetamine. Appellant apparently was released from jail on bail.

On April 11, 1968, at about 8:10 p.m. Deputy Haynie, who was in uniform and riding in a patrol unit, saw appellant drive his Cadillac car from a drive-in establishment onto a main street in Ventura and then straddle the line dividing the two eastbound lanes of such street. Deputy Haynie knew of

appellant's driving status and when he saw him driving his Cadillac car followed him and turned on a red light: appellant drove into a parking lot of a nearby service station. Haynie followed in the police car and stopped close by appellant's car. Appellant appeared nervous, agitated and angry. The pupils of his eyes were dilated. The physical appearance of appellant was such as to lead Haynie to believe that appellant was again under the influence of an amphetamine and appellant was placed under arrest. Following the arrest appellant was examined by Deputy Taylor who when he observed the conditions as heretofore mentioned formed the opinion that appellant was under the influence of an amphetamine to the extent that his ability to drive was appreciably impaired. Defendant again refused to give a urine sample for the purpose of a test.

On behalf of appellant, Donna Carmona testified that appellant was a part-time resident or visitor of her household and that on March 21, 1968, he had arrived at her house at about 7:30 or 8 p.m. and that he then appeared normal to her and that she had seen appellant about 15 minutes before he was arrested on April 11, 1968, and she had seen nothing unusual about him. The appellant did not testify in his own behalf. On rebuttal the prosecution called the manager of a restaurant where Mrs. Carmona was employed and according to the employment timecard kept with reference to Mrs. Carmona she worked from 6 to 10 p.m. on March 21, 1968, at the restaurant which is a considerable distance from where the arrests occurred.

Appellant now contends that the arrest of April 11, 1968, was without probable cause and therefore illegal as was the search and seizure on March 21, 1968, and that it was prejudicial error to permit Deputy Taylor to read from a police report which did not conform to the requirements of section 1237, Evidence Code.

There was no question or objection raised at the trial with reference to any claim of illegal arrest, search or seizure. It is too late to raise such objections for the first time on appeal. (See *People* v. *Demery*, 187 Cal.App.2d 613, 614 [10 Cal.Rptr. 135]; *People* v. *Irvin*, 264 Cal.App.2d 747, 754 [70 Cal.Rptr. 892]; *People* v. *Rivera*, 202 Cal.App.2d 839, 842 [21 Cal.Rptr. 182]; *People* v. *Richardson*, 51 Cal.2d 445, 447 [334 P.2d 573]; *People* v. *Saldana*, 233 Cal.App.2d 24, 33 [43 Cal.Rptr. 312].) The essence of the rule is stated in *Nelson* v. *California* (9th Cir. 1965) 346 F.2d 73, 80, fn. 4 ". . . . The contem-

poraneous-objection rule is but an application of the universal rule that material and relevant evidence, excludable on any ground, is admissible unless objection is made, and the grounds of objection are stated, when the evidence is offered. The rule is as old as the American common law. Our method of trying cases would be well nigh unworkable without it. Its specific application to evidence obtained by an unlawful search and seizure is well established in 'California. [Citations.]''

There can be not the slightest question under the facts as here set forth that the officers had probable cause on each occasion here related to believe that appellant had committed a felony and it was proper to proceed as was done.

■ The next contention is that it was prejudicial error to allow Deputy Taylor to read from a police report which did not conform to the requirements of section 1237, Evidence Code. No objection was made by appellant and what is stated in *People* v. *Walker,* 181 Cal.App.2d 227, 229-230 [5 Cal.Rptr. 283], is appropriate, namely: ''No objection whatever was made to this procedure. If objection had been made, a further foundation could have been laid, and the contents of the meorandum could have been presented to the jury through the testimony of the witness, refreshed by the memorandum, through not by the reading of it by the witness, under Code of Civil Procedure, section 2047. Any objection appellant may have had was waived [citation]. No doubt counsel felt that objection would have accomplished no substantive benefit for appellant, and might have been harmful in the eyes of the jury by overemphasizing the matter in their minds. Trial counsel make such choices every day.'' ·

It is too late when the matter gets to this court to make the proper objections, and in any event under the circumstances of this case there was no prejudice to appellant which is of any consequence. (See *People* v. *Pearson,* 70 Cal.2d 218, 222 [74 Cal.Rptr. 281, 449 P.2d 217]; *People* v. *Alvarez,* 268 Cal. App.2d 297, 305 [73 Cal.Rptr. 753].)

In the original reporter's transcript of the case (as submitted to this court) the proceedings had on August 7 and 23, 1968, (the dates when probation, sentencing and pronouncement of judgment took place) were not set forth. The clerk's transcript of the proceedings of August 23, 1968, recited among other things that the defendant's application for probation was denied, that defendant was sentenced to the state prison on counts I and III, the terms to run concurrently and that ''The Court declines to pronounce judgment as to

Count II.'' A supplementlal reporter's transcript was ordered to the end that his court could accurately ascertain the status of that part of the case which had to do with count II.

Appellant's counsel upon having the matter called to his attention at an oral hearing thereafter made a motion to dismiss the appeal as to count II.

The supplemental reporter's transcript of the proceedings at the time of sentencing indicates that the prosecutor at first argued strenuously that appellant should be sent to the state prison in light of appellant's seemingly bad past record. The defendant's application for probation was denied and he was sent to the Department of Corrections under the provisions of section 1203.3, Penal Code. That department refused to accept defendant because of his parole status and for other good reasons. Defendant was returned to court for further proceedings. The judge therein said: ''On the other hand, I am of the opinion that I would not want to envision a circumstance, Mr. Morrow, where you are recommitted to the Department of Corrections. By virture of your record, you would spend a long period of confinement there. I think this is not in your interest, therefore I have tentatively decided at least on another plan and another means of disposition.''

Defense counsel suggested that a short jail sentence should suffice and the court responded: ''Of course, that view would require me to void, place out of my mind completely, the fact that Mr. Morrow has reoffended, has reoffended quite seriously under the law.''

The prosecutor again urged that defendant be sent to the state prison system and then in the next sentence, in effect suggested to defendant that he make a motion to withdraw his previous admission of the prior offense and said that if such motion was granted, he, the prosecutor, would then move the court to strike the charge of the prior offense.

The court said, ''I will entertain a motion for permission to withdraw the admission of the allegation of the prior offense.'' The defendant so moved, the prosecutor indicated no opposition to the motion and permission was granted by the court as requested. The court thereupon suggested to the prosecutor that it would entertain a motion to strike the prior and the prosecutor so moved: the motion was granted. Defendant stated that there was no legal reason why judgment should not be pronounced. The court then sentenced defendant to the state prison on counts I and III, the terms to run concurrently. The court further said, ''With respect to Count

II of the Information, the Court will not impose sentence, or pronounce judgment with respect thereto.'' Thereafter the prosecutor acquiesced in the matter and made no effort to have the judge properly dispose of the cause (in so far as count II was concerned) and on August 26, 1968, defendant filed his notice of appeal ''from the judgment.''

Section 12 of the Penal Code provides: ''§ 12. The several sections of this code which declare certain crimes to be punishable as therein mentioned, *devolve a duty upon the court authorized to pass sentence, to determine and impose the punishment prescribed.*''(Italics added.) A violation of section 11910 Health and Safety Code (count II charge) makes possession of an amphetamine punishable by ''. . . imprisonment in the county jail not exceeding one year, or . . . *in the state prison for not less than one year nor more than 10 years.*'' The judge in this case appointed a proper time and place for the pronouncement of judgment pursuant to Penal Code section 1191, however, as indicated, he declined to impose sentence or to pronounce judgment with respect to count II contrary to the provisions of Penal Code section 12. Our Supreme Court has said: ''Upon conviction it is the duty of the court to pass sentence on the defendant and impose the punishment prescribed.'' (*In re Sandel,* 64 Cal.2d 412, 415 [50 Cal.Rptr. 462, 412 P.2d 806].) ■■■ Or as stated in *People v. Superior Court,* 202 Cal.App.2d 850, 855 [21 Cal.Rptr. 178] : ''. . . the power of the court in dealing with an offender to be sentenced for judgment on a plea or verdict of guilty is limited to either sentencing the defendant, suspending execution of sentence and entertaining an application for probation, or withhold the imposition of judgment and place the defendant on probation. We have found no authoritities to indicate that the court can arbitrarily dismiss the case. The situation is not like the one on a motion for a new trial, where the court has discretion to reweigh the evidence as on a duly entered plea of guilty, there is no evidence to be weighed. Thus, the court had no discretion except to sentence the defendant or grant probation in a lawful manner (*Stephens* v. *Toomey, supra* [51 Cal.2d 864 (338 P.2d 182)]).

''The writ of mandate lies to compel the performance of an act by the court which the law specifically enjoins as a duty resulting from an office, trust or station (Code Civ. Proc., § 1085).''

Section 1202 Penal Code provides in part: ''If no sufficient cause is alleged or appears to the court at the time fixed for pronouncing judgment, as provided in Section 1191 of this

code, why judgment should not be pronounced, *it must thereupon be rendered*; and if not rendered or pronounced within the time so fixed or to which it is continued under the provisions of Section 1191 of this code, then the defendant shall be entitled to a new trial." (Italics added.) It is said in *People* v. *Williams,* 24 Cal.2d 848, 850 [151 P.2d 244], with reference to this problem: "Although section 1191 provides that the judgment must be pronounced within a designated period, it has been consistently held that failure to pronounce judgment within the time specified is not jurisdictional. [Citations.] The last-cited case states: 'Numerous California authorities have held that the failure of the court to pronounce judgment within the limitation of time prescribed by section 1191 of the Penal Code does not automatically entitle the defendant to a new trial under the provisions of section 1202 of the Penal Code, nor does such delay render the judgment void for lack of jurisdiction. A judgment so pronounced may not be reversed on appeal unless the delay results in a miscarriage of justice, for the reason that the pronouncing of judgment is a mere matter of procedure which will not warrant a reversal, under the provisions of article VI, section 4½, of the Constitution of California.' Section 1191 by its terms must be read with section 1203. Therefore, even if we were to assume that the judgment against defendant was not pronounced until after the time limited therefor, it would have to be held that such failure was not jurisdictional to the judgment." (See also *People* v. *Plaehn,* 237 Cal.App.2d 398, 400 [46 Cal.Rptr. 872], and cases cited therein.)

Under section 1237, Penal Code, a defendant may take an appeal (1) from a final judgment of conviction (2) from any order made after judgment, affecting the substantial rights of the party. ▮ Following the rendition of a proper judgment of conviction and upon the filing of an appeal the trial court loses jurisdiction over the subject matter to the appellate court. (See *People* v. *Sonoqui,* 1 Cal.2d 364, 366 [35 P.2d 123] ; *Anderson* v. *Superior Court,* 66 Cal.2d 863, 865 [59 Cal.Rptr. 426, 428 P.2d 290] ; *France* v. *Superior Court,* 201 Cal. 122, 131 [255 P. 815, 52 A.L.R. 869] ; *People* v. *Haynes,* 270 Cal.App.2d 318, 321 [75 Cal.Rptr. 800].)

In this case, however, as heretofore stated, no judgment was ever pronounced with reference to the count II charge. We are not unmindful of the possibility of a claim by defendant that the delay has prejudiced him, that at the time of sentence the prosecutor made no objection and took no action to rectify the

lack of action; that he in effect acquiesced in the procedure. From this point of time however we cannot see where any prejudice would result to defendant. In any event as this court stated in *Lewis* v. *Superior Court,* 261 Cal.App.2d 736, 740-741 [68 Cal.Rptr. 631] : " '. . . . In determining whether or not the delay has been unreasonable, regard will be had to any circumstances which justify the delay, to the nature of the case and the relief demanded, and to the question whether the rights of the defendants, or of other persons, have been prejudiced by the delay.' [Citation.]''

We conclude that this court does not have jurisdiction to dismiss the proceeding as to count II and that it is the obligation and responsibility of the trial judge to perform his duty under section 12 of the Penal Code. Under the law and the circumstances the judge had many options but to decline to do anything at all was not one of them. In short he cannot abdicate his duty. Mandate is available to compel the fulfillment of a duty, however it would be hoped that such a procedure would not be necessary and that the judge would pronounce judgment and impose the punishment prescribed. If that be done appellant will still serve the term as a first offender which he is not, but he cannot complain of this.

The motion to dismiss count II is denied. The judgments with respect to counts I and III are and each of the same is affirmed.

Lillie, J., and Thompson, J., concurred.