[Civ. No. 24472. Fourth Dist., Div. One. July 24, 1981.]

RICHARD ALAN HOFFMAN, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

M. Lynn Mayo and Frank X. Nageotte for Petitioner.

Quin Denvir, State Public Defender, Paul Bell and Jeffrey J. Stuetz, Deputy State Public Defenders, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman, Thomas F. McArdle and James E. Hamilton, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**STANIFORTH, J.**—Petitioner seeks a writ of prohibition to prevent any further proceedings to determine whether he is a mentally disordered sex offender (MDSO). He contends no statutory authorization exists for the procedures the trial court has followed here, and also, principles analogous to the defense of former jeopardy preclude redetermination of his MDSO status because he was found not to be an MDSO shortly before these proceedings were begun.

Petitioner was originally found to be an MDSO in March of 1973 after he pled guilty to two counts of forcible rape, firearm allegation admitted on one count. He was not then sentenced; instead criminal proceedings were suspended and he was committed as an MDSO. Later, as the statutes provide (Welf. & Inst. Code, § 6316.1),[1] the Community Release Board fixed a maximum time limit on his commitment to the Department of Mental Hygiene. Then, pursuant to section 6316.2, the commitment was extended for two years, to expire March 19, 1982. During that extended commitment, specifically on September 12, 1980, the Director of Patton State Hospital, where petitioner was hospitalized, sent a report to the superior court within the terms of section 6325, subdivision (a), stating the opinion petitioner will not benefit by further care and treatment and is not a danger to the health and safety of others. Accompanying that opinion were letters and recommendations of staff members at Patton, agreeing petitioner will not benefit from further hospital treatment and is not a danger but recommending continued probation supervision including provisions for placement in a board and care facility, treatment in a local mental health agency which provides psychotherapy and psychotropic medication when indicated. The reports state petitioner suffers from schizophrenia and requires continuous medication. One letter specifically states "this man is still suffering from his basic schizophrenia."

---

[1] All references are to the Welfare and Institutions Code unless otherwise specified.

Nevertheless the same letter agrees petitioner is not an MDSO. The specific recommendation in the letter, signed by a medical examiner, is: "This man should be placed in a board and care facility and should attend outpatient clinic. He should be placed on psychotropic medication or kept on same as he is getting at the present time. With this kind of supervision, attending the clinic, and staying at a board and care home, his behavior can be observed and he would most likely be safe in the community." This recommendation is not an unqualified opinion that petitioner is no longer a danger to the community, but instead represents a qualified conclusion of nondangerousness provided there is supervision and medication; nevertheless the formal opinion and recommendation of the director of Patton is that petitioner cannot benefit from treatment and is no longer a danger. Such a recommendation, within the terms of section 6325, subdivision (a), triggers mandatory language in the last paragraph of the statute requiring return to court, redetermination of MDSO status, followed by a mandatory resumption of criminal procceedings if the committed person is found no longer to be an MDSO.[2]

In compliance with section 6325, after petitioner was returned to court pursuant to the above opinion of the director of Patton, the court held a hearing and determined petitioner was no longer an MDSO.

---

[2]The statute provides: "(a) Whenever a person who is committed to a state hospital or other treatment facility under the provisions of this article or placed on outpatient status under Title 15 (commencing with Section 1600) of Part 2 of the Penal Code has been treated to such an extent that in the opinion of the medical director of the state hospital or other facility or the outpatient treatment supervisor under Title 15 (commencing with Section 1600) of Part 2 of the Penal Code, the person will not benefit by further care and treatment and is not a danger to the health and safety of others, the medical director or person in charge of the facility or county mental health director or a designee where the person is on outpatient status, shall file with the committing court a certification of that opinion including therein a report, diagnosis, and recommendation concerning the person's future care, supervision or treatment.

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(c) The court shall transmit a copy of the opinion certified under subdivision (a) or (b) to the county mental health director or a designee and shall give notice of the hearing date to the county mental health director or a designee and to the Director of Mental Health.

"Upon the expiration of the time for making a motion pursuant to Section 6325.2, upon the denial of such motion, or *upon the entry of a finding that the person is no longer a mentally disordered sex offender* after a hearing pursuant to Section 6327, *the committing court shall order the return of the person to the committing court.* The committing court shall thereafter cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge.   .

"Such court shall resume the proceedings, upon the return of the person to the court .... " (Italics added.)

That hearing took place October 30, 1980 (Hon. Donald Smith). As mandated by section 6325, upon the finding petitioner is not an MDSO, criminal proceedings were ordered resumed. Petitioner was released O/R during the probation investigation with arrangements for him to receive his medication. On December 5 he was sentenced to prison to the term prescribed by law with credit for time spent in the hospital as the statutes direct. On that date, the defendant waived arraignment for judgment and the court pronounced judgment, imposing a sentence as to *one* count only. No reference was made to a second count of rape to which Hoffman had pleaded guilty in 1973 and upon which Hoffman had never been sentenced. The minutes of the court and the abstract of judgment state count *five* (the count on which no sentence was pronounced) was to run consecutive to count two with credit for time served. At a further hearing (Dec. 16, 1980), the court observed that "at the time of Mr. Hoffman's sentencing in this matter, all counsel and the court were under a number of false or incorrect impressions as to the status of the case. The first was that Mr. Hoffman had served the maximum amount of time . . . ."

This assumption was made because "the computations made by the Community Release Board were made on the basis of a one-count conviction of rape with an armed allegation . . . . But . . . the Community Release Board . . . did not take into consideration . . . the fact that Mr. Hoffman's . . . plea was as to two counts . . . . [¶] *It was brought to the court's attention after the sentencing was concluded, after counsel had departed, that count 5 the second count to which the defendant pled, had never been considered . . . .*" These facts formed the basis for a trial court recall of Hoffman with a view to imposing sentence on the second rape count.

A further complication then ensued. While petitioner was contesting the court's power to recall the sentence or to impose any further time, the district attorney filed petitions to have petitioner found to be an MDSO, citing as authority alternatively section 6302, subdivision (a) (initial hearing to determine MDSO status after criminal procedure) and section 6316.2, subdivision (h) (recommitment after expiration of extended commitment). Responding to those petitions, the court on February 6, 1981, suspended the criminal proceedings on the unsentenced rape charge (§ 6302, subd. (a)), scheduled a psychiatric examination to determine if petitioner is an MDSO, and set a hearing date to resolve that issue after examination. We issued our stay of those proceedings to determine their validity.

As the district attorney views the matter, the trial court, by resuming MDSO proceedings, is attempting to correct two errors which have occurred in petitioner's case. First, it is argued, sentences have not yet been imposed on both counts. Second, the trial court erred in not finding petitioner to be still an MDSO at the October hearing, since it is apparent from the Patton staff reports petitioner could be a danger absent supervision, and the staff assumed such supervision, under the probation department's auspices, would be forthcoming.

The problem with the latter contention is it does not track the statutory procedures applicable to a return to court on a section 6325, subdivision (a), recommendation. Section 6325 plainly provides when a director of the hospital certifies his opinion a defendant will not benefit from treatment and is not a danger, then a hearing may be held under section 6325.2 to review the correctness of that opinion. That hearing is the statutorily provided procedure to review the correctness of the director's opinion that the defendant is no longer an MDSO. If the outcome of the hearing is a finding that defendant is not an MDSO, then again, in the plain language of section 6325, subdivision (c), "the committing court *shall* order the return of the person to the committing court. The committing court shall thereafter cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge. [¶] Such court *shall* resume the proceedings . . . ." (Italics added.) In short, resumption of criminal proceedings is mandatory after a finding of non-MDSO status. That interpretation is also the holding of a case interpreting the predecessor statute, section 5517, with nearly identical language. (*Russell* v. *Superior Court* (1959) 172 Cal.App.2d 60 [342 P.2d 389].)

The statutory language quoted would have little meaning if the criminal proceedings, once resumed, could be immediately suspended in order to determine MDSO status; yet that is what has been done here, using the theoretical justification of the still unresolved second count of rape. We assume the trial court's authority and duty to sentence on that second count, yet there is no authority for further MDSO proceedings in such context. Further, in addition to there being no statutory provision for such procedure, it appears to violate the fundamental doctrines of res judicata or collateral estoppel, doctrines which in criminal law are akin to pleas of former jeopardy and protect against harassing retrials of issues once determined. (See *Ashe* v. *Swenson* (1970) 397 U.S. 436 [25 L.Ed.2d 469, 90 S.Ct. 1189]; *People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622].) Collateral estoppel

in a criminal case, as embodied in the Fifth Amendment's protection against double jeopardy, means an issue of ultimate fact once determined by a valid and final judgment cannot be relitigated between the same parties in a future lawsuit. (See *Ashe* v. *Swenson, supra*, 397 U.S. 436, 443 [25 L.Ed.2d 469, 475]; *People* v. *Taylor, supra*, 12 Cal.3d 686, 691.)

Although a number of cases have considered whether it violates double jeopardy protection to punish both for MDSO status and for the underlying criminal offense (with the vast majority holding no violation, see e.g., Annot. (1970) 34 A.L.R.3d 652, 705, § 17; *People* v. *Greene* (1973) 34 Cal.App.3d 622 [110 Cal.Rptr. 160]; *People* v. *Chapman* (1942) 301 Mich. 584 [4 N.W.2d 18]), research reveals but one case considering whether double jeopardy, or collateral estoppel principles preclude redetermination of MDSO status. That case, *People* v. *O'Lea* (17 Cal.App.3d 834 [95 Cal.Rptr. 287]) rejected a contention that a determination of recovery from MDSO status in 1965 barred a later finding of such status in 1969. The court there pointed out: "Neither res judicata nor the related doctrine of collateral estoppel is applicable. It is implicit in the statutory provisions for MDSO proceedings that the existence of the mental disease against which society is to be given protection and the cure of the patient suffering from the disease are determined by orders that are necessarily tentative in nature." (17 Cal.App.3d at p. 839.) The court went on to point out the factual issues regarding the defendant's condition in 1965 were clearly different from those arising in 1969, and the issue determined in 1965, whether defendant was then an MDSO, was also obviously different from the issue whether he was an MDSO in 1969.

*O'Lea* factually is not in point. O'Lea committed additional acts of sexual misconduct while on probation granted in reinstituted criminal proceedings after a four-year interim of MDSO proceedings.

Given the facts in *O'Lea*, which clearly did not invoke collateral estoppel principles, the court's broad statement of the nonapplicability of the general doctrine to MDSO procedures must be viewed with caution. In general, questions of status are subject to the doctrines of res judicata or collateral estoppel like other legal issues, and such questions may be redetermined only on a showing of changed facts. (See generally 4 Witkin, Cal. Procedure (2d ed. 1971) Judgments, § 181.) Accordingly no reason appears why the doctrines are not as applicable to MDSO determinations as to other findings of ultimate fact, with of

course the proviso redetermination is always permissible if the facts have changed. More fundamentally, however, it is obviously unfair and violates due process in a criminal or quasi-criminal proceeding to redetermine matters once resolved; such unfairness is the basis of the *Ashe* and *Taylor* decisions, *supra*. Sexual psychopathy proceedings are essentially criminal and are subject to the full panoply of due process protection as in criminal cases. (*People v. Burnick* (1975) 14 Cal.3d 306, 317-318, 324-325 [121 Cal.Rptr. 488, 535 P.2d 352]; *People v. Feagley* (1975) 14 Cal.3d 338, 350-351 [121 Cal.Rptr. 509, 535 P.2d 373].) The protections of the collateral estoppel doctrine must therefore apply to MDSO proceedings as to other criminal matters.

It cannot be seriously argued here that the facts concerning petitioner's MDSO condition have changed between the hearing in October 1980, when he was found to be no longer an MDSO, and the hearing in February when the MDSO proceedings were reinstituted. No such showing was even attempted. Accordingly the redetermination is a violation of the due process rights of petitioner as embodied in the protection against redetermination of issues which have been resolved on the merits in a full hearing. Petitioner's status was so resolved in October at a hearing, after the director had submitted his section 6325, subdivision (a), recommendation. If there was error in the finding petitioner is not an MDSO, it could only be challenged through review by accepted appellate avenues. Once allowed to become final, that determination prevents further findings regarding MDSO status unless something new, such as the commission of a new offense, takes place which might justify resumption of new MDSO proceedings. In short the further proceedings to determine petitioner's MDSO condition are absolutely barred.

The MDSO proceedings and the writ sought here brought the sentencing proceedings attempted by the judge as to count five to a halt. The following rules are pertinent, controlling in such a fact setting.

Upon reinstitution of the criminal proceedings, there was a mandatory duty imposed upon the trial court to pronounce judgment on Hoffman as to each count of which he stood convicted. "After a conviction, following either a plea or verdict of guilty, the court must pronounce judgment upon the defendant (Pen. Code, §§ 1191, 1193, 1202, 1445), i.e., impose a fine or sentence of imprisonment. (*People v. Perkins*, 147 Cal.App.2d 793 . . . .)" (*People v. Blackman* (1963) 223 Cal.App.2d 303, 307 [35 Cal.Rptr. 761].) Or, stated another way,

"where probation is denied, the court must pronounce judgment upon the defendant by imposing a fine or a sentence of imprisonment." (*People* v. *Hartsell* (1973) 34 Cal.App.3d 8, 13 [109 Cal.Rptr. 627]; *In re Sandel* (1966) 64 Cal.2d 412, 415 [50 Cal.Rptr. 462, 412 P.2d 806]; *People* v. *Browning* (1975) 45 Cal.App.3d 125, 145 [119 Cal.Rptr. 420]; *In re Eugene R.* (1980) 107 Cal.App.3d 605, 612 [166 Cal.Rptr. 219].) We do not confront here an error made "in the pronouncement of judgment" as in *People* v. *Hartsell, supra*, 34 Cal.App.3d at page 13, or *In re Candelario* (1970) 3 Cal.3d 702 [91 Cal.Rptr. 497, 477 P.2d 729] (a failure to mention prior convictions when pronouncing judgment). Rather the trial judge did not pronounce any judgment whatsoever on count five. While there may be speculation as to the reason(s) for this failure, the stark underlying fact of no pronouncement of judgment remains. The court "was obliged to sentence defendant" (*People* v. *Browning, supra*, 45 Cal.App.3d 125, 145) on all counts but did not do so. The rules applicable (see *In re Candelario, supra*, 3 Cal.3d 702) where judicial error *in the pronouncement of judgment* is sought to be corrected, have no application here.

■ The failure of the trial court to pronounce judgment within the time limitation set by statute does not, absent prejudice, result in a loss of jurisdiction in the trial court to pronounce judgment at a later date. (*People* v. *Williams* (1944) 24 Cal.2d 848, 850 [151 P.2d 244], and cases cited; *People* v. *Harrison* (1970) 5 Cal.App.3d 602, 611 [85 Cal.Rptr. 302]; *People* v. *Cheffen* (1969) 2 Cal.App.3d 638, 642 [82 Cal.Rptr. 658]; *People* v. *Morrow* (1969) 275 Cal.App.2d 507, 514, 515 [80 Cal.Rptr. 75]; *People* v. *Benton* (1979) 100 Cal.App.3d 92, 102 [161 Cal.Rptr. 12].) Hoffman makes no claim of prejudice arising from the delayed sentencing as to count five and the record before us affords no basis for concluding any prejudice will result from the delay in such sentencing irrespective of the reasons for the misunderstanding and the failure to pronounce judgment on count five. The cardinal fact remains Hoffman has yet to be sentenced on count five. The trial court is under a mandatory duty to pronounce judgment upon him as to this count.

■ It has been argued the determination of the Community Release Board on August 30, 1977, setting a release date of March 19, 1980, precludes imposition of further time, but this argument is erroneous. The statute, Welfare and Institutions Code section 6316.1, subdivision (b), gives the Board of Prison Terms (formerly Community Release Board) authority for Indeterminate Sentence Law commitments to cal-

culate "the maximum term of commitment which could have been imposed" had the offenses involved been committed after the determinate sentence law was enacted. Here the Community Release Board was in error because the maximum time that could have been imposed would have been consecutive terms on the two counts to which petitioner pleaded guilty, but the Community Release Board imposed time on one count only. By so doing, the Community Release Board could not usurp the court's mandatory function under Penal Code sections 1193 and 1202 to pronounce judgment and sentence. That judicial duty was not delegated to the Community Release Board by section 6316.1, subdivision (b); such delegation would violate the doctrine of separation of powers and also the goal of the determinate sentence law to maintain maximum judicial control over sentencing, within legislatively set parameters. Hence the Community Release Board's erroneous computations in 1977 are irrelevant to the court's present power, and duty, to pronounce judgment on the second count.

The finding in October that Hoffman is not an MDSO has become final and cannot be relitigated; hence the proceedings here to determine MDSO status are beyond the jurisdiction of the court and are prohibited.

Let a writ of prohibition issue preventing any further proceedings to determine whether petitioner is an MDSO based on the guilty pleas entered in 1973. The cause is remanded for pronouncement of judgment on count five.

Brown (Gerald), P. J., concurred.

On August 18, 1981, the following opinion was filed:

WIENER, J., Concurring and Dissenting—I agree with the majority that further proceedings to determine Hoffman's MDSO condition are barred. I respectfully dissent from the holding directing the trial court upon remand to pronounce judgment on count 5. Because of the circumstances surrounding the sentencing in this case, the trial court, under the impression defendant had sufficient credit to satisfy whatever sentence might be imposed, found it unnecessary to orally articulate the sentence on the additional count. Accordingly, this case falls within Penal Code section 669, requiring the sentence on count 5 to be served concurrently. Although Penal Code section 669 generally permits a

court which has not determined whether the second judgment shall run concurrently or consecutively to a prior judgment to correct the judgment within 60 days, the sentencing court cannot do so here because the "prior" consisted of another conviction in the same case. (*In re Calhoun* (1976) 17 Cal.3d 75, 80-81 [130 Cal.Rptr. 139, 549 P.2d 1235].)

My point of departure from the analysis made by the majority is their assumption there was "[no] error . . . 'in the pronouncement of judgment'" because ". . . the trial judge did not pronounce any judgment whatsoever" on the omitted count. (*Ante*, p. 724.) I do not believe their unequivocal positivism excluding other reasonable inferences is warranted. A brief review of the events occurring after criminal proceedings were resumed is helpful.

After Hoffman waived arraignment for judgment and sentence, on December 5, 1980, the third continued sentencing hearing, the judge said, ". . . I've done my mathematics on my computer this morning, and it turns out that the credit time that you computed . . . exceeds by quite a little bit the maximum period of commitment as computed by the Community Release Board . . . . [I]n that statement [the] maximum term of commitment indicates that the maximum term of commitment for the crime of forcible rape with an armed allegation for Mr. Hoffman was six years eight months and sixteen days; and at that time, they set his release date on January 12th, 1980. . . .

"It will be the judgment and sentence of this court that the defendant be sentenced to the state prison for the term prescribed by law. This offense was as a result of a plea of guilty under the indeterminate sentence law; but as I've indicated, *the amount of time to be served has been served*, six years, eight months and sixteen days. You'll be given credit for that time, for the time that you have served, which has been computed by the probation officer at 2462 days, plus 3 . . . ." (Italics supplied.)

Shortly thereafter, the judge caught the error made by the Community Release Board which had computed the release date on the basis of a one-count conviction of rape with an armed allegation overlooking Hoffman's conviction of a second count. The court on its own motion set the matter down for a further hearing. During that hearing, the court acknowledged its reliance on the mistake which had been made "by the Community Release Board [to reach] a threshold assumption at

the time of sentencing." The commitment previously made was recalled and the case continued for resentencing.

At this further hearing, the judge again explained his assumption at the time of sentencing was based upon the Community Release Board's error in computing the maximum amount of time the defendant could serve. He said, "I don't think the record ever reflected, at least not with clarity, other than the clerk's minutes, that *count 2 was by this court sentenced to have been run consecutive to—or the second count was to have run consecutive to the first one.*" (Italics supplied.) Also, "We're here today for two things, and that is to, certainly, correct the record with regard to the second count so that the record clearly reflects *the court's intention that that count was to run consecutive or, originally, that that was the court's intention;* . . ." (Italics supplied.) At this juncture proceedings were deferred because Hoffman sought a writ of prohibition.

In light of this history, I believe at least two inferences may be drawn from the court's pronouncement of judgment. One possible inference is that made by the majority—the trial judge's failure to refer to count 5 indicates he overlooked that count, thereby retaining the power, absent prejudice to the defendant, to exercise judicial discretion to sentence at a later time. But an equally plausible inference may also be drawn. Here, the trial judge, thoughtfully grappling with the many difficult issues presented over a period of several weeks at six different hearings, finally reached the frustrating, perhaps exasperating, time to sentence a potentially dangerous person under circumstances which appeared to furnish no alternative other than to release the defendant because of the time he had already served. With this mind set, it would hardly have been necessary or even expected, that a trial judge recite the sentence on each count when doing so would have been an exercise in futility. In that setting, the court's silence can reasonably be interpreted to reflect its intent that the sentence on the omitted count was included within the count upon which sentence was imposed. This logical inference is also consistent with the judge's later expression of his intention to have sentenced on both counts. Where two inferences can be drawn in a criminal case, one favorable to the defendant and the other unfavorable, we are compelled to adopt the inference which favors defendant. (See generally, *In re Tartar* (1959) 52 Cal.2d 250, 257 [339 P.2d 553].) Thus, pursuant to Penal Code section 669, the court may not now impose consecutive sentences.

More importantly, the rule the majority has fashioned will have dramatic consequences inviting the exercise of judicial discretion at sentencing on more than one occasion. In its present form, the opinion authorizes an appellate court after *affirmance* of a multicount judgment to remand to the trial court for resentencing on affirmed counts which were not mentioned during the pronouncement of judgment. Now as a matter of law, a record which does not reflect pronouncement of judgment on every count of which a defendant stands convicted will necessarily mean the trial court failed to sentence on the omitted count(s) rather than having exercised discretion to allow a defendant to serve the omitted counts concurrently. The authorities cited by the majority do not support this holding.

The question in *People v. Williams* (1944) 24 Cal.2d 848 [151 P.2d 244], was whether sentence could be imposed at the time of revocation of probation where it was not pronounced at the time probation was granted. The court held the failure to pronounce judgment within the time prescribed by Penal Code section 1191 was not jurisdictional and sentence was properly imposed at the time of probation revocation where the defendant was confined in another state there being no duty to pronounce judgment against an absent defendant. (*Id.*, at pp. 850-854.) *People v. Benton* (1979) 100 Cal.App.3d 92, 102 [161 Cal.Rptr. 12], involved the imposition of an unauthorized sentence, not the case here, which could be corrected upon remand. In *People v. Morrow* (1969) 275 Cal.App.2d 507, 514-515 [80 Cal.Rptr. 75], the trial judge expressly refused to impose sentence on a specific count. There being no doubt as to the trial court's failure to exercise discretion, the appellate court in dictum opined mandate would lie for the performance of this judicial responsibility. (*Ibid.*) Both *People v. Harrison* (1970) 5 Cal. App.3d 602, 610 [85 Cal.Rptr. 302], and *People v. Cheffen* (1969) 2 Cal.App.3d 638, 642 [82 Cal.Rptr. 658], required a remand to the trial court for sentencing after *reversal* of convictions because the trial court had failed to stay execution of the less severely punishable offenses pending appeal or during service of the term imposed on other counts pursuant to *People v. Niles* (1964) 227 Cal.App.2d 749, 756 [39 Cal.Rptr. 11].

Thus, without legislation or case authority, the majority has developed a new proposition wholly contrary to the rationale and holdings of *In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729], and *People v. Hartsell, supra*, 34 Cal.App.3d 8, 12-15. Accord-

ingly, I would issue the writ of prohibition without remand for further proceedings.