Filed 10/6/14  P. v. Arce CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL JOSEPH ARCE,<br><br>    Defendant and Appellant. | D063999<br><br><br>(Super. Ct. Nos. SCS251545;<br>                           SCS259123) |

APPEAL from a judgment of the Superior Court of San Diego County, Alvin E. Green, Judge.  Affirmed in part; reversed in part and remanded.

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Lynne McGinnis and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

Daniel Arce appeals a judgment following his jury conviction of robbery (Pen. Code, § 211),[1] assault with a deadly weapon (§ 245, subd. (a)(1)), and hit and run driving (Veh. Code, § 20002, subd. (a)). On appeal, he contends the trial court erred by: (1) giving a special instruction regarding expert testimony on eyewitness identifications; and (2) awarding him 679 days of credit for his misdemeanor Vehicle Code section 20002, subdivision (a), conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On July 27, 2011, Arce and another man parked a silver Mustang for a couple of hours on the street near Robert Morales's house where neighbors had left items outside for others to take away. Arce and the other man got out of the Mustang and approached a generator and vacuum extractor, which were both running, near Morales's motor home. Arce picked up the extractor and the other man picked up the generator. Morales yelled at them to put the items down, explaining the generator and extractor were not free to be taken. The two men ignored Morales and ran to their car. Arce dropped the extractor on the way, but the other man placed Morales's generator in the car. Arce got in the driver's seat and the other man got in the passenger's seat. As Morales ran toward the car to stop them, Arce drove toward Morales at 15 to 25 miles per hour, hitting him and knocking him to the street.

Morales got on a motorcycle and pursued the fleeing Mustang, which sped along streets and onto the freeway. He saw Arce driving the car. During the chase, Arce and

_____

[1]    All statutory references are to the Penal Code unless otherwise specified.

his passenger threw items, including Morales's generator, out of the car's window.[2] At one point, Morales saw the passenger pull out a small semi-automatic weapon and heard two gunshots. Later, Arce lost control of the Mustang and collided with another car. Morales called police and reported the license number of the Mustang. He also observed Arce when close to him. However, a few minutes later, Arce drove away again. Police found the car later and impounded it.

Morales did not identify anyone in the first photographic lineup he was shown by police, or in the live lineup. He positively identified Arce in a later photographic lineup and was certain he was the driver of the silver Mustang.

Arce's DNA was found on the driver's side of the Mustang. The car belonged to his nephew, who was staying with Arce at the time. That day the nephew found his car keys in an unusual place and Arce told him the car had been impounded. Morales did not identify Arce's nephew as depicting the other man involved in the incident.

An amended information charged Arce with robbery, assault with a deadly weapon, and hit and run driving. It alleged that in committing the robbery he used a firearm (§ 12022, subd. (a)(1)) and a deadly weapon (i.e., a motor vehicle) (§ 12022, subd. (b)(1)). It alleged that in committing the assault with a deadly weapon he used a deadly weapon (i.e., a motor vehicle) (§ 1192.7, subd. (c)(23)). It also alleged he had two

---

2      Those discarded items were later recovered by police.

or more prior felony convictions (§ 1203, subd. (e)(4)) and had served two prior prison terms (§ 667.5, subd. (b)).

At trial, the prosecution presented evidence substantially as described above. In his defense, Arce presented the testimony of Robert Shomer, an expert on eyewitness identification. Shomer had not visited any of the incident locations or interviewed any of the eyewitnesses in this case. Shomer stated his expert testimony was "not to substitute some opinion of [his] for the jurors but simply provide some information, tools, so to speak, that they may choose to use or may choose not to use in their evaluation" of the eyewitness identification evidence. He stated he could not determine whether a particular eyewitness identification was correct, but could only talk generally about reasons why eyewitness identifications may or may not be accurate.

Shomer testified the chance of an eyewitness correctly identifying a stranger in difficult circumstances and under high stress was about 50-50. Lighting, distance, duration, adrenalin, stressful situations, and cross-racial identification are important factors in the accuracy of an eyewitness's identification. Also, over time eyewitnesses may become more confident in their identifications because they commit themselves to the identifications already made, but research shows accuracy is more likely to decline over time.

The jury found Arce guilty of all three charged offenses and found true all but one of the allegations related to counts 1 and 2. He admitted the allegation he had served two prior prison terms (§ 667.5, subd. (b)). The trial court sentenced Arce to a prison term of

4

three years for count 1, with a consecutive one-year enhancement for the firearm use allegation and two consecutive one-year enhancements for the prior prison term allegations, and imposed and stayed a concurrent three-year term for count 2. Regarding count 3, the court denied probation and granted Arce 679 days of credit for time served. The court also sentenced him to an additional one-year term for an assault conviction in another case, to be served consecutively to the sentence in the instant case. Arce timely filed a notice of appeal.

DISCUSSION

I

*Jury Instructions Generally*

"[T]he trial court normally must, even in the absence of a request, instruct on general principles of law that are closely and openly connected to the facts and that are necessary for the jury's understanding of the case." (*People v. Carter* (2003) 30 Cal.4th 1166, 1219.) A court may also have a duty to give instructions requested by the parties, but it may properly refuse a requested instruction "if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation]." (*People v. Moon* (2005) 37 Cal.4th 1, 30.) Alternatively stated, "[i]n a criminal trial, the court must give an instruction requested by a party if the instruction correctly states the law and relates to a material question upon which there is evidence substantial enough to merit consideration." (*People v. Barajas* (2004) 120 Cal.App.4th 787, 791.) If a court gives an instruction that is an incorrect statement of

5

law, a defendant's failure to object or request clarifying or corrective language does not forfeit a challenge to that instruction on appeal. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012; see § 1259 ["The appellate court may . . . review any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."]; *People v. Smithey* (1999) 20 Cal.4th 936, 976-977, fn. 7.) "When we review challenges to a jury instruction as being incorrect or incomplete, we evaluate the instructions given as a whole, not in isolation." (*People v. Rundle* (2008) 43 Cal.4th 76, 149; see *People v. Castillo* (1997) 16 Cal.4th 1009, 1016.)

## II

### *Special Instruction No. 1*

Arce contends the trial court prejudicially erred by giving a special instruction requested by the prosecutor because that instruction incorrectly stated the law regarding expert testimony on eyewitness identifications.[3]

### A

At trial, the prosecutor requested a special instruction regarding expert testimony on eyewitness testimony. The prosecutor apparently based that instruction on language contained in *People v. McDonald* (1984) 37 Cal.3d 351 (*McDonald*). Arce's counsel replied that she had not had an opportunity to review the case on which that requested

---

[3]      To the extent Arce may be correct, he did not forfeit his challenge to the instruction by not objecting to it below. (§ 1259; *People v. Hudson*, *supra*, 38 Cal.4th at pp. 1011-1012; *People v. Smithey*, *supra*, 20 Cal.4th at pp. 976-977, fn. 7.)

instruction was based.  The trial court stated it had read the case and intended to give the instruction unless Arce's counsel subsequently objected to it.  However, his counsel did not later object to the instruction.

After instructing with CALCRIM Nos. 226 (on credibility of witnesses), 315 (on eyewitness identification testimony), and 332 (on expert witness testimony), the court instructed the jury with the prosecutor's requested special instruction No. 1, as follows:

> "Expert testimony has been presented regarding factors which may affect an eyewitness identification.  *The law does not permit such experts to express an opinion regarding the presence or absence of such factors under the particular facts of this case*.  In addition, the law does not allow such experts to express an opinion as to the accuracy of the eyewitness identification in this case.  [¶]  Therefore, you are not to speculate as to whether the expert holds an opinion regarding such issues or what such opinion might be.  You are to give the testimony of the expert the weight to which you find it to be entitled.  You are the sole judges to what extent, if any, such testimony is to be applied to the witness's identification in this case." (Italics added.)

The jury found Arce guilty of all three charged offenses.

B

Arce asserts special instruction No. 1, given by the trial court, incorrectly stated the law and therefore violated his rights to present a defense, due process, and a fair trial. He argues the second sentence of that instruction is incorrect because the law allows expert witnesses to express opinions on the presence or absence of factors that may affect eyewitness identifications.

In *McDonald*, *supra*, 37 Cal.3d 351, the court considered whether the trial court had erred by excluding expert witness testimony proffered by the defendant on

7

psychological factors that may affect the accuracy of eyewitness identification.[4] (*McDonald, supra,* 37 Cal.3d at p. 361.)  In that case, the expert witness "made it clear that he did not propose to offer an opinion that any particular witness at this trial was or was not mistaken in his or her identification of defendant.  But he did intend to point out various psychological factors that could have affected that identification in the present case." (*Id.* at p. 362.)  *McDonald* concluded the trial court erred by excluding the expert testimony proffered by the defendant on psychological factors that may affect the accuracy of eyewitness identification.  (*Id.* at pp. 371-376.)  The court explained its reasoning, stating:

> "The expert testimony in question does *not* seek to take over the jury's task of judging credibility: as explained above, it does not tell the jury that any particular witness is or is not truthful or accurate in his identification of the defendant.  Rather, it informs the jury of certain factors that may affect such an identification in a typical case; and to the extent that it may refer to the particular circumstances of the identification before the jury, such testimony is limited to explaining the potential effects of those circumstances on the powers of observation and recollection of a typical eyewitness.  The jurors retain both the power and the duty to judge the credibility and weight of all testimony in the case, as they are told by a standard instruction.

> "Nor could such testimony in fact usurp the jury's function.  As is true of all expert testimony, the jury remains free to reject it entirely after considering the expert's opinion, reasons, qualifications, and credibility.  Indeed, the Penal Code commands (§ 1127b) that an instruction so informing the jury be given in any criminal trial in which expert opinion evidence is received." (*People v. McDonald*, *supra*, 37 Cal.3d at pp. 370-371, fns. omitted.)

---

[4]    We note Shomer was also the expert witness involved in *McDonald*.  (*McDonald*, *supra*, 37 Cal.3d at p. 361.)

8

Based on the record in that case, the court further concluded the trial court's error was prejudicial under *People v. Watson* (1956) 46 Cal.2d 818, 836, and required reversal of the defendant's conviction. (*McDonald*, *supra*, 37 Cal.3d at p. 376.)

Arce argues *McDonald*'s language regarding expert witness testimony on eyewitness identification does not support the special instruction requested by the prosecutor and given by the trial court in this case. However, even if *McDonald*'s language does not support the special instruction, Arce nevertheless has not carried his burden on appeal to show the trial court erred. We are not persuaded the special instruction's language incorrectly stated the law and, more importantly, that the trial court's instructions *as a whole* were incorrect. (*People v. Rundle*, *supra*, 43 Cal.4th at p. 149; *People v. Castillo*, *supra*, 16 Cal.4th at p. 1016.) The mere fact *McDonald* may not have supported the second sentence of the special instruction does not prove, in itself, that the court's special instruction or its instructions as a whole were incorrect.

Arce does not cite any case or other authority as support for his assertion that an expert witness *is* entitled to express an opinion on the presence or absence of certain factors that may affect an eyewitness identification in a particular case. To the extent he relies on language from *McDonald*, we believe he overstates its import. *McDonald* stated that an expert witness may "inform[] the jury of *certain factors* that may affect such an identification *in a typical case*; *and* to the extent that it *may refer to the particular circumstances* of the identification before the jury, such testimony is limited to *explaining the potential effects of those circumstances on* the powers of observation and

9

recollection of *a typical eyewitness*." (*McDonald*, *supra*, 37 Cal.3d at pp. 370-371, italics added.) Therefore, the court concluded, in effect, that an expert witness may discuss certain factors that affect eyewitness identifications in *a typical case* and, furthermore, may *refer to* certain factors that appear relevant in a particular case, but, in so doing, may explain only the potential effects of those factors on *a typical eyewitness*. There is a distinct difference between that permitted expert testimony and Arce's suggestion that an expert is entitled to state his or her opinion that certain factors were, in fact, present or absent in a particular case. Arce has not carried his burden to persuade us that the second sentence of the special instruction was an incorrect statement of law (i.e., instruction that "[t]he law does not permit such experts to express an opinion regarding the presence or absence of such factors under the particular facts of this case").[5] (Cf. *People v. Page* (1991) 2 Cal.App.4th 161, 188 [*McDonald* does not require the trial court to permit expert witness to discuss particular evidence in case].)

Assuming arguendo that the second sentence of the special instruction should have been modified to conform to *McDonald*'s language, we nevertheless conclude the trial court's instructions, as a whole, on expert testimony and eyewitness identification were correct and therefore the court did not err by giving the special instruction. The court

---

[5]    Although we need not decide this instant question to dispose of this appeal, we believe there is merit to the proposition that questions of fact should be decided by the jury and not expert witnesses, and the jury should decide the question of fact whether certain factors were present or absent in a particular case and how those factors affected a particular eyewitness's identification. The special instruction in this case is not clearly an incorrect statement of the law.

10

instructed with CALCRIM No. 226 on factors the jury may consider in evaluating the credibility or believability of witnesses, including identification eyewitnesses. Those factors include: "[h]ow well could the witness see, hear, or otherwise perceive the things about which the witness testified?" and "[h]ow well was the witness able to remember and describe what happened?" More specifically, the court instructed with CALCRIM No. 315 on 15 factors the jury should consider in evaluating the identification testimony of an eyewitness. Many of those factors coincide with the factors to which Shomer testified that may affect an eyewitness's identification (e.g., lighting, weather conditions, distance, duration of observation, stress during observation, and cross-racial identification). The court also instructed with CALCRIM No. 332 on expert witness testimony, stating the jury was required to consider the expert's opinions but was not required to accept them as true or correct and could disregard any opinion unsupported by the evidence. Given the nature and content of the trial court's instructions as a whole, we conclude the court correctly instructed the jury on expert witness testimony, eyewitness identifications, and how the jury should consider an expert witness's testimony regarding certain factors that may affect an eyewitness's identification in a typical case.

C

Assuming arguendo the trial court erred by instructing with the special instruction, we nevertheless conclude that error was harmless under the *People v. Watson*, *supra*, 46 Cal.2d 818, standard of prejudice. Under *Watson*, an error is harmless unless the defendant shows it is reasonably probable he or she would have obtained a more

11

favorable result had the error not occurred. (*Id*. at p. 836.) Contrary to Arce's assertion, the type of assumed instructional error in this case was *not* equivalent to an abridgement of a defendant's constitutional right to present a defense. Therefore, any error is subject to the *Watson* standard rather than the more stringent standard of *Chapman v. California* (1967) 386 U.S. 18, 24 (i.e., error is prejudicial unless People show it is harmless beyond a reasonable doubt). As the People assert, this case involved, at most, instructional error regarding the proper consideration of an expert witness's testimony and did not involve the relatively more egregious exclusion of such expert witness testimony in its entirety as in *McDonald*, *supra*, 37 Cal.3d 351 and *People v. Sanders* (1990) 51 Cal.3d 471, 506, both of which applied the *Watson* standard of prejudice. Based on our review of the whole record, including the evidence regarding Morales's identification of Arce and circumstantial evidence tying Arce to the crime, and the trial court's instructions, including CALCRIM Nos. 226 (on credibility of witnesses), 315 (on eyewitness identification testimony), and 332 (on expert witness testimony), we conclude it is not reasonably probable Arce would have received a more favorable outcome had the court not given the special instruction. (*Watson*, *supra*, 46 Cal.2d at p. 836; *People v. Sanders*, *supra*, 51 Cal.3d at p. 506.) Morales did not equivocate in his identification of Arce. Arce's DNA was found on the driver's side of the Mustang, which belonged to his nephew. Hi nephew was staying with Arce at the time. Morales's generator was found where he described it being thrown from the Mustang during the chase. Finally, Arce does not cite to any testimony by Shomer stating his opinion regarding the presence or

12

absence of eyewitness identification factors in this case that would have arguably been negated by the special instruction given by the trial court. Accordingly, the trial court's instructional error, if any, was harmless and does not require reversal of Arce's convictions.

### III

### *Count 3 Conviction*

Arce contends the trial court erred by awarding him 679 days of credit for his count 3 misdemeanor conviction for hit and run driving (Veh. Code, § 20002, subd. (a)). The People apparently agree the court should not have awarded him 679 days of credit for count 3, but note the trial court did not impose *any* sentence for count 3 and therefore assert remand for resentencing is required. We agree with the People's position.

The record shows the trial court denied probation for Arce's count 3 conviction and awarded him credit for time served, which totaled 679 days of credit. However, the court did not impose any sentence on Arce for his count 3 conviction. A court has a duty to pronounce judgment on each count of which a defendant is convicted. (*Hoffman v. Superior Court* (1981) 122 Cal.App.3d 715, 724.) The court erred by not imposing any sentence for Arce's count 3 conviction. On remand, the court shall impose an authorized sentence for that conviction and award him appropriate credits toward that sentence for time served.

DISPOSITION

The judgment is reversed to the extent the trial court did not impose a sentence on Arce for his Vehicle Code section 20002, subdivision (a), conviction, and the matter is remanded for resentencing.  In all other respects, the judgment is affirmed.


McDONALD, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.